IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Roanoke Division)

| | | |
|---|---|---|
| _____ | ) | |
| JENNIFER LORD, EBONY REDDICKS, | ) | |
| AND TONIRAYE MOSS, | ) | |
| Individually and on behalf of all persons | ) | |
| similarly situated | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civ. No. _7:20-cv-541_ |
| | ) | |
| SENEX LAW, P.C. | ) | JURY TRIAL REQUESTED |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **CLASS ACTION COMPLAINT**

### **Preliminary Statement**

The Defendant, Senex Law, P.C., is a debt collection firm located in Hampton, Virginia, that focuses on collecting consumer debt on behalf of landlords throughout the Commonwealth.  This case concerns Senex's practice of preparing and sending dunning letters to tenants directly from Senex's office.  To disguise the true origin of the dunning letters, the letters are printed on the individual landlord's letterhead and purport to be signed by a representative of the landlord.  Senex intentionally designs the letters so that they appear to come directly from the landlord (or its property managers). The letters represent that the Landlord has retained counsel specifically in connection with the tenant's alleged delinquency and demand that the tenants pay Senex's attorney's fee to the landlord, in addition to allegedly unpaid rent and late fees.

However, the amounts being charged as attorney's fees are not reasonable, and the Notices greatly overstate the level of attorney involvement.  Upon information and belief, Senex churns out hundreds or thousands of these Notices each month in a window of just a few days, with a representation of attorney involvement when in fact there has been no meaningful attorney review of the underlying claims.  Then, just a few days later, Senex continues the churn by filing hundreds or thousands of unlawful detainer suits in courts throughout the Commonwealth, again tacking on their own attorney's fee but again without any meaningful attorney involvement or review of the underlying claim.

Accordingly, Senex has violated and continues to violate the requirements of the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* by, among other unlawful practices, sending Notices directly to tenants without identifying itself as a debt collector, falsely representing the nature of the services rendered by and compensation which may be lawfully received by Senex, using a name other than Senex's name in connection with the collection of a debt,  collecting amounts that are not authorized by the agreement creating the debt or permitted by law, and representing the fact of attorney involvement but without any meaningful attorney review.  None of these allegations should come as a surprise to Senex.  It was sued just a few years ago for conduct materially identical to that complained of herein.  *See Crawford v. Senex Law, P.C.*, No. 3:16cv73, 2017 U.S. Dist. LEXIS 184297 (W.D. Va. Nov. 7, 2017) (denying Senex's motion for judgment on the pleadings); *Crawford v. Senex Law, P.C.*, 259 F. Supp. 3d 464 (W.D. Va. 2017) (denying Senex's motion to dismiss).  Clearly Senex operated as a debt collection mill, purporting to practice law with respect to issuing these Notices, and failing to even give a nod to compliance with the FDCPA in its Notices.  Senex has had

three years to learn its lesson and voluntarily adjust its practices but has wholly failed to do so.  This lawsuit thus ensues.

This suit is based on Notices like those described above sent by Senex to Plaintiffs on behalf of their landlords.  Because Senex was not the party to which the rent was originally due under the lease, Senex is attempting to collect debts on behalf of another. By so doing, Senex triggers multiple legal obligations under the FDCPA, each of which Senex failed to meet. Through their deceptive Notices and ensuing debt collection practices, Senex deprived plaintiffs of notice of their dispute rights, hampered their ability to challenge eviction proceedings and debt collection efforts, created confusion and increased stress on the plaintiffs, and caused plaintiffs to incur costs not permitted or provided for by their lease agreements with their landlords.

**<u>Legal Violations</u>**

As an entity that regularly "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," Senex is a "debt collector" under the Fair Debt Collections Practices Act ("FDCPA").  15. U.S.C. § 1692a(6).  As such, Senex may not employ false, deceptive or misleading means, or engage in unfair practices, when collecting debt.  *Id.* § 1692e & f.  Yet Senex does just that by sending dunning letters that purport to come from the landlord when, in fact, they come from Senex, falsely representing the nature of the services rendered by and compensation which may be lawfully received by Senex, using a name other than Senex's name in connection with the collection of a debt, falsely representing the meaningful involvement of an attorney, and

collecting amounts that are not authorized by the agreement creating the debt or permitted by law. Additionally, the dunning letters Senex sends directly to consumers are required to contain certain information set forth at 15 U.S.C. § 1692g. However, Senex's dunning letters do not contain the information required in § 1692g(a)(3)-(5). Senex's dunning letters therefore violate the FDCPA in numerous respects.

After sending these hundreds or thousands of illegal notices, Senex files corresponding unlawful detainers across the Commonwealth with little to no attorney involvement. In 2020 alone, despite an eviction moratorium in place during the pandemic, Senex law has filed 3,891 unlawful detainers in Virginia. Thus, with only a handful of attorneys, Senex files almost 650 evictions per month, in an off year, considering the global public health crisis which necessitated a federal and state moratorium. Though Senex often hires outside counsel later on in its eviction processes, Senex Law files the initial lawsuit that leads to evictions. Given the enormous volume of evictions filed, so few attorneys (one of whom, upon information and belief, is largely focused on client development), physics and time do not allow for any meaningful attorney involvement in Senex's debt collection scheme.

Plaintiffs bring this claim individually and on behalf of all of those in the Commonwealth of Virginia who have received, and who during the pendency of this lawsuit receive, dunning letters from Senex that purport to have been sent by their landlord and which violate § 1692e & f as alleged herein and do not contain the required § 1692g disclosures. Plaintiffs request compensatory damages including actual damages, class-wide statutory damages, injunctive relief against continued predatory debt collection practices, and payment of their attorneys' fees and costs.

## Venue and Jurisdiction

1.      Jennifer Lord, Ebony Reddicks, and Toniraye Moss sue defendant, Senex Law, P.C., for violations of the Fair Debt Collection Practices Act (FDCPA), § 1692d, § 1692e(2)(A), (3), (5), (9), (10), (11) and (14), § 1692(f)(1), and § 1692g, on behalf of themselves and all others similarly situated.

2.      Jurisdiction over the plaintiffs' claim lies in this court pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3.      Venue is proper in this court as multiple Notices complained of herein were directed to consumers at their residences in the City of Roanoke, Virginia.

## Parties

4.      Plaintiff Jennifer Lord is an adult resident of the City of Roanoke.

5.      Plaintiff Ebony Reddicks is an adult resident of the City of Roanoke.

6.      Plaintiff Toniraye Moss is an adult resident of the City of Hopewell.

7.      Each of the Plaintiffs is a consumer within the meaning of the FDCPA, 15 U.S.C. § 1692a(3), because each allegedly accrued overdue rent for their primary residence, which is a debt for personal, family or household purposes.

8.      Defendant Senex Law, P.C. is a Virginia Professional Corporation with a principal place of business at 3 Ruckman Road, Hampton, VA 23666.

9.      Senex is a debt collector within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), because it "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

10.     Senex Law, P.C. was formerly known as Sage Law Group, and continues to operate in the same manner as it did under its prior trade name.

## STATEMENT OF FACTS

### Background

11.     Senex serves multi-family housing owners and property managers, including sending tenants Notices related to debt collection and eviction proceedings. (See https://senexlaw.com/)

12.     Senex advertises itself as a law firm whose "custom, proprietary software allows our clients to process legal documents quickly, cheaply, and accurately." This software is touted as an "online notice, eviction, and collections service that's easy to use!" *Id.*

13.     Upon information and belief, Senex is hired by Frontier Apartments, Freedman Point Apartments, and many other multifamily rental properties (collectively the "Landlords"), not parties to this action, to collect on allegedly past due rent payments under the residents' respective leases.

14.     Upon information and belief based upon Senex's description of its software on its website, Senex uses the following process to send Notices to residents who are late on rent payments: a) the Landlord sends Senex a list of accounts for which a debt is allegedly past due, b) Senex prepares the noncompliance dunning letter on Landlord letterhead, and c) Senex personnel then prints out and sends the Notice directly to the tenant. Each tenant's information is saved and retained by Senex in its proprietary debt collection software. After the Notices are sent to the various tenants, each tenant's information is automatically saved within the Senex debt collection software to permit

Senex to generate and file Unlawful Detainer pleadings using the same information used to generate and send the Notices.  Then, for all of the tenants that have Unlawful Detainers filed against them the Senex debt collection software continues to retain the information initially obtained in conjunction with preparing and sending the Notices for further stages and efforts at debt collection.  The Notice is thus the first step in Senex's seamless, integrated debt collection machine.

15.     Through Notices and other correspondence sent by Senex to tenants as a result of past-due rent allegedly owed on the recipient's primary residence (hereafter referred to as "Notices"), Senex attempted to collect debts or purported debts from plaintiffs using the mails or other means of interstate commerce.

16.     All Notices were on Landlord letterhead and were purportedly signed by a staff member of Landlord, when in fact the signature was affixed at Senex's office using Senex equipment.  Upon information and belief, each Notice was mailed by Senex in an envelope bearing date-stamped postage from NEOPOST account, zip code 23663, the same account used for notices mailed by Senex, as opposed to the zip codes where the various Landlords are located.

17.     Notices sent to Plaintiffs indicate that the Landlord has now retained Senex, which drafted the Notices "and provided legal advice due to your noncompliance."  The Notices still purport to come from the Landlord, despite the fact that they were prepared and sent by Senex.

18.     For each Notice sent by Senex that is the subject of this Complaint, under the guise of Landlord, plaintiffs were charged "attorneys' fees," typically thirty dollars ($30).  However, upon information and belief, the work by Senex that prompts this

"attorneys' fee" is not legal in nature, but rather standard debt collection tasks routinely performed by non-attorney debt collectors.  Senex churns out a very high volume of Notices each month in a short time frame at the beginning of every month.  Upon information and belief, Senex conducts debt collection work that does not require legal training or a license to practice law, and is thus not properly characterized as work for which an "attorney's fee" is recoverable under the tenants' leases with their landlords.  And by claiming that there has been attorney involvement and demanding attorney's fees, the Notices mislead and confuse the tenants about the nature and seriousness of the situation.

19.     Likewise, within days of sending these illegal notices, Senex Law churns out unlawful detainers across Virginia against *thousands* of Virginians, with little to no attorney involvement for each action.

20.     This business model is directly damaging to plaintiffs as fees are charged each time Notices are sent for which plaintiffs are allegedly liable even though they do not purport to come from attorneys.  This business model also leads to additional fees from multiple and repetitive court filings costly to both the plaintiffs and the courts.  And finally, Senex's practice misleads and intimidates debtors by invoking the specter of meaningful attorney involvement.

**Statutory Framework**

21.     As an entity that regularly "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of

any debts, or who regularly collects or attempts to collect, directly or indirectly, debts

owed or due or asserted to be owed or due another," Senex is a "debt collector" under the

Fair Debt Collections Practices Act ("FDCPA"). 15. U.S.C. § 1692a(6) (2012).

22.     As such, Senex may not employ false, deceptive or misleading means or

engage in unfair practices when collecting debt. *Id.* § 1692e & f.

23.     The Notices sent to the plaintiffs were false, deceptive, misleading, and

unfair because, among other things, the notices purportedly came from the Landlords,

when in fact they actually came from Senex, falsely represented the nature of the services

rendered by and compensation which may be lawfully received by Senex, used a name

other than Senex's name in connection with the collection of a debt, and falsely conveyed

that there had been meaningful attorney involvement in the sending of the Notices when

in fact, there had been no such involvement.

24.     Additionally, the Notices Senex sends directly to consumers are required

to contain certain information set forth at 15 U.S.C. § 1692g.

25.      However, the Notices do not contain the information required in §

1692g(a)(3)-(5).

## Individual Plaintiffs' Facts

**Ms. Jennifer Lord (Mullen)**

26.     Ms. Jennifer Lord, formerly Jennifer Mullen, leased an apartment in 2018 at Frontier Apartments in the City of Roanoke, Virginia where she continues to reside. She entered a new lease for the same apartment on or about March 27, 2019.

27.     Ms. Lord has received by mail and by posting on her front door a Notice of Noncompliance for alleged nonpayment of rent and fees several times during her tenancy.

28.     While each mailed Notice listed a return address for Frontier Apartments, and was purportedly signed by an employee of Frontier Apartments, upon information and belief the Notice actually came from Senex.

29.     Upon information and belief, the signature on each mailed Notice was digitally added in the Senex office located in Hampton, Virginia, using Senex equipment.

30.     The mailed notices described above failed to give Ms. Lord notice of her rights under the FDCPA, including her right to contest the debt or ask for verification of the alleged debt within 30 days.

31.     The Notices described above stated an amount of rent that Ms. Lord allegedly owed as of the date specified in the Notice, along with a late fee of $100, substantially more than  a late fee of 10% of the monthly rent allowed under the terms of the lease.

32.     The Notices described above also claimed that Ms. Lord owed an additional $30 "Attorney Fees (Notice of Noncompliance)" each time a Notice was issued.

33.     Upon information and belief, the $30 for "Attorney Fees (Notice of Noncompliance)" was charged for providing boilerplate notices that any non-attorney debt collector could complete, print and deliver to a tenant.  All the preparer had to do was fill in the name, address, date, and amounts allegedly due on the boilerplate notice. Pink copies of the notices also were delivered to Ms. Lord's apartment and taped to her front door.

34.     In addition to the Notices of alleged Noncompliance, Senex filed four Summons for Unlawful Detainer against Ms. Lord, each claiming an immediate right to possession of her apartment because of her alleged nonpayment of rent, as shown below:

| Notice Date | Hearing Date | Hearing Type | Plaintiff | Outcome |
|---|---|---|---|---|
| unknown | 06/11/2019 | Unlawful Detainer | Frontier Apartments Acquisitions, LLC | Judgment for Plaintiff for Possession only.  No rent. |
| unknown | 09/10/2019 | Unlawful Detainer | Frontier Apartments Acquisitions, LLC | Judgment for Plaintiff – Satisfied by Ms. Lord |
| 01/08/20 | 02/18/2020 | Unlawful Detainer | Frontier Apartments Acquisitions, LLC | Dismissed |
| unknown | 06/05/2020 | Unlawful Detainer | Frontier Apartments Acquisitions, LLC | Dismissed |

35.     Upon information and belief, each time an unlawful detainer was filed, a charge of $100 for attorney fees was claimed for preparing and filing the unlawful detainer, even though the Notice of alleged Noncompliance indicated that only $70 in attorney fees would be charged upon filing.

36.     Aside from the act of signing[1] the Unlawful Detainer as counsel for its landlord clients, there is no meaningful attorney involvement in the filing of the Unlawful Detainers.  Therefore, upon information and belief, the $100 greatly overstated the nature of attorney involvement in the filing of the Unlawful Detainer.

37.     Attorney fees were also added to Ms. Lord's account prior to case filing or hearing, thereby bypassing any ruling of the court on the reasonableness of the fees.

38.     Immediately upon entry of the attorney fees onto Ms. Lord's account, the attorney fees became rent owed by Ms. Lord, even though the fill-in-the-form unlawful detainer had not yet been filed with the court.

39.     Defendant's actions caused Ms. Lord mental distress and anguish.

**Ms. Ebony Reddicks**

40.     Ms. Ebony Reddicks entered into a lease dated December 6, 2019 to rent an apartment at Frontier Apartments in the City of Roanoke, Virginia for herself and her son.

41.     Ms. Reddicks has received by mail and by posting on her front door a Notice of Noncompliance for alleged nonpayment of rent and fees several times during her tenancy.

42.     While each mailed Notice listed a return address for Frontier Apartments, and was purportedly signed by an employee of Frontier Apartments, upon information and belief the Notice actually came from Senex.

---

[1] It is not known whether the Unlawful Detainers are actually signed by an attorney or if an attorney's signature is mechanically affixed to the Unlawful Detainer.

43.    Upon information and belief, the signature on each mailed Notice was digitally added in the Senex office located in Hampton, Virginia, using Senex equipment.

44.    The mailed notices described above failed to give Ms. Reddicks notice of her rights under the FDCPA, including her right to contest the debt or ask for verification of the alleged debt within 30 days.

45.    The Notices described above stated an amount of rent that Ms. Reddicks allegedly owed as of the date specified in the Notice, along with a late fee of $100, substantially more than 10% of the monthly rent, and amounting to a penalty unenforceable at common law.

46.    The Notices described above also claimed that Ms. Reddicks owed an additional $30 "Attorney Fees (Notice of Noncompliance)" each time a Notice was issued.

47.    Upon information and belief, the $30 for "Attorney Fees (Notice of Noncompliance)" was charged for providing boilerplate notices that any non-attorney debt colletor could complete, print and deliver to a tenant.  All the preparer had to do was fill in the name, address, date, and amounts allegedly due on the boilerplate notice.  Pink copies of the notices also were delivered to Ms. Reddicks' apartment and taped to her front door.

48.    In addition to the Notices of alleged Noncompliance, Senex filed three Summons for Unlawful Detainer against Ms. Reddicks, each claiming an immediate right to possession of her apartment because of her alleged nonpayment of rent, as shown below:

| Notice Date | Hearing Date | Hearing Type | Plaintiff | Outcome |
| --- | --- | --- | --- | --- |

| 01/08/2020 | 02/18/2020 (final hearing date of 06/05/2020) | Unlawful Detainer | Frontier Apartments Acquisitions, LLC | Dismissed |
| 02/06/2020 | 03/17/2020 (final hearing date of 06/05/2020) | Unlawful Detainer | Frontier Apartments Acquisitions, LLC | Dismissed |
| 03/09/2020 | 06/05/2020 (final hearing date pending) | Unlawful Detainer | Frontier Apartments Acquisitions, LLC | Pending |

49.     Each time an unlawful detainer was filed, a charge of $100 for attorney fees was claimed on the unlawful detainer for preparing and filing the unlawful detainer, even though the Notice of alleged Noncompliance indicated that only $70 in attorney fees would be charged upon filing.

50.     Aside from the act of signing[2] the Unlawful Detainer as counsel for its landlord clients, there is no meaningful attorney involvement in the filing of the Unlawful Detainers.  Therefore, upon information and belief, the $121 greatly overstated the nature of attorney involvement in the filing of the Unlawful Detainer.

51.     Attorney fees of $70 for the unlawful detainer were also added to Ms. Reddicks' account prior to case filing or hearing, thereby bypassing any ruling of the court on the reasonableness of the fees and despite claiming an additional $100 in attorney fees on the unlawful detainer.

52.     Immediately upon entry of the attorney fees onto Ms. Reddicks' account, the attorney fees became rent owed by Ms. Reddicks, even though the fill-in-the-form unlawful detainer had not yet been filed with the court.

---

[2] It is not known whether the Unlawful Detainers are actually signed by an attorney or if an attorney's signature is mechanically affixed to the Unlawful Detainer.

53.    Defendant's actions caused Ms. Reddicks mental distress and anguish.

**Ms. Toniraye Moss**

54.    On December 31, 2019, Ms. Toniraye Moss signed a residential lease with Freedman Point Apartments ("Freedman Point"), in Hopewell, Virginia.  She moved into her unit a few days later in early January 2020 with her minor child.

55.    On February 18, 2020, Freedman Point retained Senex, a collections firm, who sent an eviction Notice to Ms. Moss for alleged past rent owed.

56.    On March 2, 2020, Ms. Moss made payments to Freedman Point via money orders.

57.    On March 6, 2020, Ms. Moss received a Notice of Noncompliance, drafted by Senex, which was a collection letter for her alleged failure to pay rent, indicating the amount of past rent owed plus other fees.

58.    The above Notice alleged that Ms. Moss owed Freedman Point $1,166.00 in rent, $50.00 in late fees, and $30 in attorneys' fees for the generation of the Notice of noncompliance.

59.    The Notice described above alleged that rent was past due and that the collection of which was sought by Senex's letter was rent allegedly owed for Ms. Moss's primary residence.

60.    The Notice described above did not indicate that it was sent by Senex, only that it was drafted by Senex.

61.    The Notice described above was on Freedman Point letterhead and was purportedly signed by the Freedman Point Community Manager, Tom Crawford.

62.     Upon information and belief, the signature was digitally added to the Notice at the Senex office using Senex equipment.

63.     Upon information and belief, the Notice was mailed by Senex personnel at the Senex office.

64.     The Notice described above failed to indicate that the Notice was actually sent by Senex under the guise of Freedman Point and failed to include § 1692g language informing Ms. Moss that the true origin of the Notice was from a debt collector.

65.     The Notice described above failed to give Ms. Moss Notice of her rights under the FDCPA, including her right to contest the debt or as for verification within 30 days.

66.     On April 24, 2020, Ms. Moss made payments to Freedman Point via money orders.

67.     On May 6, 2020, Ms. Moss received a Notice of nonpayment of rent, addressed to "Resident" and signed by "Community Manager" of Freedman Point.

68.     The May 6, 2020 Notice included the letterhead of Woda Cooper Companies, while also including "Freedman Point" in plain font.

69.     The May 6, 2020 Notice reminded Ms. Moss of her alleged outstanding balance, as a way for Freedman Point to elicit payment for the allegedly owed rent without overtly violating the CARES Act.

70.     On May 20, 2020, Ms. Moss received a letter, addressed to "Resident" and from by "Tom Crawford, Community Manager" of Freedman Point Apartments, without a signature.  The letter reminded Ms. Moss of her alleged outstanding balance of $1,705.60.

71.     On May 20, 2020, Ms. Moss also received a Notice to resident of nonpayment of rent, addressed to "Resident" and signed by the "Community Manager" of Freedman Point.

72.     The Notice mentioned above reminded Ms. Moss of her alleged outstanding balance, as a way for Freedman Point to elicit payment for the allegedly owed rent without overtly violating the CARES Act.

73.     On June 8, 2020, Helen D. Helms, Esq. of Senex mailed a letter to the clerk of the court, requesting that Ms. Moss's eviction matter be "non-suited."

74.     On June 8, 2020, Ms. Moss also received a copy of the resident ledger, which reflects Freedman Point's records of payments, late fees, court costs, and attorneys' fees, several of which Ms. Moss disputes.

75.     On June 18, 2020, Ms. Moss received a letter, addressed to "Resident" and from by "Tom Crawford, Community Manager" of Freedman Point Apartments, without a signature.  The letter reminded Ms. Moss of her alleged outstanding balance of $2,670.98.

76.     The letter mentioned above included the letterhead of Woda Cooper Companies, while also including "Freedman Point Apartments" in plain font.

77.     In addition to the Notices, Freedman Point, through Senex counsel, filed two separate eviction lawsuits against Ms. Moss with the following results:

| Notice Date | Hearing Date | Hearing Type | Plaintiff | Outcome |
|---|---|---|---|---|
| 2/18/2020 | 3/11/2020 | Unlawful Detainer | Freedman Point LP | Dismissed |
| 5/1/2020 | 6/10/2020 | Unlawful Detainer | Freedman Point LP | Non-Suit |

78.    Both eviction lawsuits against Ms. Moss were either dismissed or non-suited.

79.    Ms. Moss has suffered from mental and physical distress due to the Notices, eviction proceedings, and associated fees issued by Senex, causing Ms. Moss chest pain and increased blood pressure.

## CLASS ACTION ALLEGATIONS

### A.    Class Common to All Plaintiffs

80.    The individual Plaintiffs bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

81.    The named individual Plaintiffs seek to represent a class of present and former tenants of residential properties located in Virginia whose Landlord engaged Senex to facilitate overdue rent collection, and who received Notices for alleged past due rent sent by Senex at any time on or after September 9, 2019.

82.    Tenant means individuals who received at least one Notice of alleged past due rent from Senex.

83.    This class of present and former tenants shall remain open through pendency of this litigation.

84.    Plaintiffs' claims meet the requirements of Federal Rule of Civil Procedure Rule 23(a)(1) because, upon information and belief, the number of individuals in the class exceeds 100 individuals.

85.    The relatively small amount of the individual claims and the financial circumstances of the class members make the maintenance of separate actions by each

class member economically infeasible, resulting in a class so numerous that joinder of all members is impracticable.

86.    Plaintiffs meet the requirements of Rule 23(a)(2) because there are questions of law and fact common to the class including:

        a.    Whether class members received Notices which threatened eviction upon nonpayment of fees and alleged past due rent, and which purported to come from Landlords but in fact were drafted and sent by Senex and misleadingly convey meaningful attorney involvement;

        b.    Whether these Notices were required by the FDCPA to contain certain notices and information and to refrain from using certain means and methods of debt collections and violated these requirements;

        c.    Whether Defendant filed unlawful detainers against class members without meaningful attorney involvement;

        d.    the actual damages of the members of the class, including the payment of attorneys' fees not properly owed to the Landlord; and

        e.    Whether Senex failed to promulgate processes and procedures sufficient to ensure the Notices were accurate and legal.

87.    The claims of the named Plaintiffs are typical of the claims of the class, thereby meeting the requirements of Rule 23(a)(3) because they have the same interests as the other members of their class and will vigorously pursue these interests on behalf of the class.

88.     Plaintiffs will fairly and adequately represent the interests of the class, thereby meeting the requirements of Rule 23(a)(4), because Plaintiffs know of no conflicts of interest between themselves and members of the class.

89.     Plaintiffs further meet the requirements of Rule 23(a)(4) because they are represented by attorneys who are experienced litigators and who have handled numerous actions in the federal courts, including complex class actions, and who will adequately represent the interests of the entire class.

90.     A class action is appropriate under Rule 23(b)(3) because:

       a.  The Defendant has acted on grounds generally applicable to the class by violating Plaintiffs' rights under the FDCPA.

       b.  Questions of law and fact common to class members predominate over any questions affecting only individuals and to Plaintiffs' knowledge there is no current litigation of individual claims pending in any forum.

91.     A class action therefore will allow the claims to be efficiently adjudicated in a single forum.

## CAUSE OF ACTION: VIOLATIONS OF THE FDCPA

92.     All preceding paragraphs are realleged and incorporated herein by reference.

93.     At all times relevant to this action, Senex was a debt collector within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), because it engaged in a business which regularly collected and attempted to collect debts, and whose principal purpose was to

collect debts, owed or due to another which were already in default through the instrumentalities of interstate commerce.

94.     Jennifer Lord, Ebony Reddicks, Toniraye Moss, and all class members are consumers within the meaning of the FDCPA, 15 U.S.C. § 1692a(3), because the alleged overdue rent were debts incurred for personal, family, or household purposes.

95.     When the Notices described above purported to come from Landlords, Senex used an identity inconsistent with its true identity, which is a violation of 15 U.S.C. § 1692e(14).

96.     The misrepresentations regarding the true role of Senex in drafting, sending, and administering the Notices described above were deceptive for purposes of the FDCPA, 15 U.S.C. § 1692e(10).

97.     The misrepresentations about an attorney having been retained and having performed meaningful attorney work in connection with that specific case were deceptive for purposes of 15 U.S.C. § 1692e, e(3), e(9), and e(10).

98.     The Notices described above did not notify Plaintiffs that Senex was attempting to collect a debt and that any information obtained will be used for that purpose, which is a violation of 15 U.S.C. §1692e(11) and 15 U.S.C. §1692g.

99.     The Notices described above were false, deceptive and misleading, and employed unfair or unconscionable means to collect a debt, in that they misrepresented the work performed by Senex in connection with preparing and sending the Notices as work for which an attorney's fee was properly chargeable, all in violation of 15 U.S.C. § 1692e(2)(A) and (B) and 15 U.S.C. § 1692f(1).

100.    Defendant's noncompliance with the FDCPA was intentional within the meaning of 15 U.S.C. § 1692k, as defendant intended to and did in fact draft and mail the defective Notices to Plaintiffs.  Moreover, Senex was on actual notice of the violative nature of its practices by virtue of the prior *Crawford* litigation.

101.    Defendant violated the FDCPA, 15 U.S.C. § 1692d, §1692e(2)(A) and (B), (5), (10), (11) and (14), 1692f(1), and 1692g, causing actual injuries to Plaintiffs, as well as the entire class, thus making Senex liable to them in damages.  These damages include, but are not limited to, payment of substantial amounts of money for "attorney's fees" that were not properly or legally collectible as attorney's fees, increased stress and mental anguish, increased confusion, and loss of validation and dispute rights.

## Requested Relief

Wherefore, plaintiffs respectfully request that this Court provide the following relief:

102.    Assume jurisdiction of this case;

103.    Certify the plaintiff class pursuant to F.R.C.P. 23(a) and (b)(3);

104.    Grant Plaintiffs a trial by jury on their claims;

105.    Grant an award of damages pursuant to 15 U.S.C. § 1692k, including the actual damages suffered by each class member in an amount to be proven at trial; statutory damages in the amount of $1,000 per named plaintiff; the lesser of $500,000 or 1% of the net worth of the Defendant; the costs of the action; and reasonable attorneys' fees; and

106.    Grant such other and further relief as this Court deems necessary and proper.

*Respectfully submitted,*

_____/s/ E. Kyle McNew_____
E. Kyle McNew (VSB No.: 73210)
M. Bryan Slaughter (VSB No.: 41910)
MICHIEHAMLETT PLLC
500 Court Square, Suite 300
P.O. Box 298
Charlottesville, VA 22902
(434) 951-7200; (434) 951-7254 (facsimile)
kmcnew@michiehamlett.com
bslaughter@michiehamlett.com
dthomas@michiehamlett.com

Kelly Poff Salzmann (VSB No.: 73884)
Caroline Klosko (VSB No.: 78699)
Elaine Poon (VSB No.: 91963)
Nady Peralta (VSB No.: 91630)
Brenda E. Castañeda (VSB No.: 72809)
LEGAL AID JUSTICE CENTER
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
(434) 977-0553
kelly@justice4all.org
carrie@justice4all.org
elaine@justice4all.org
nady@justice4all.org
brenda@justice4all.org

David D. Beidler (VSB No. 24563)
THE LEGAL AID SOCIETY OF ROANOKE VALLEY
132 Campbell Ave. SW
Suite 200
Roanoke, VA  24011
(540) 344-2087; (540) 342-3064 (facsimile)
david@lasrv.org

*Counsel for Plaintiffs*