# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| **JENNIFER LORD, <u>et al.</u>,** ) | |
| ) | |
| **Plaintiffs,** ) | **Civil Action No. 7:20CV00541** |
| ) | |
| **v.** ) | **Hon. Michael F. Urbanski** |
| ) | **Chief United States District Judge** |
| **SENEX LAW, P.C.,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Jennifer Lord, Ebony Reddicks, and Toniraye Moss have filed a class action lawsuit against Senex Law, P.C., alleging violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p.  Senex has filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The motion has been fully briefed and argued and is ripe for review.  For the reasons stated below, the motion will be granted in part and denied in part.

## I.   Background

The following facts are taken from the complaint and are construed as true for purposes of this motion.  <u>Hall v. DIRECTV, LLC</u>, 846 F.3d 757, 765 (4th Cir. 2017) ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.").

### A.  Senex Law, P.C.

Senex is a law firm that serves multifamily housing owners and property managers and helps send tenants Notices related to debt collection and eviction proceedings.  Compl., ECF

No. 1, ¶ 11.  Multifamily rental properties hire Senex to collect on residents' past due rent payments.  Id. ¶ 13.

The plaintiffs describe Senex's business model as follows.  First, a landlord sends Senex a list of accounts for which a debt is allegedly past due.  Id. ¶ 14.  Next, Senex prepares a noncompliance dunning letter (the "Notices") on landlord letterhead before printing and sending the Notice directly to the tenant.  Id.  Senex saves each tenant's information in its proprietary debt collection software so that it can quickly generate unlawful detainer pleadings.  Id.  The initial Notice Senex sends "is thus the first step in Senex's seamless, integrated debt collection machine."  Id.

The plaintiffs maintain that Senex attempts to collect tenants' past-due rent by sending the tenants the Notices and other correspondence.  Id. ¶ 15.  While each Notice that the plaintiffs received was issued on landlord letterhead and was "purportedly signed by" a landlord's staff member, each signature was in reality "affixed at Senex's office using Senex equipment."  Id. ¶ 16.  The plaintiffs allege that Senex mailed each Notice "in an envelope bearing date-stamped postage from NEOPOST account, zip code 23663, the same account used for notices mailed by Senex, as opposed to the zip codes where the various Landlords are located."  Id.

Per the complaint, the Notices indicate that the landlord has retained Senex, who "already drafted this notice and provided legal advice due to [the plaintiff's] noncompliance." Id. ¶ 17.  The Notices also "still purport to come from the Landlord, despite the fact that they were prepared and sent by Senex."  Id.  Moreover, in each Notice at issue, "under the guise of Landlord, plaintiffs were charged 'attorneys' fees,' typically thirty dollars."  Id. ¶ 18.  The

2

plaintiffs contend, however, that Senex's work "is not legal in nature, but rather standard debt collection tasks routinely performed by non-attorney debt collectors." Id. Indeed, Senex "churns out a very high volume of Notices each month in a short time frame at the beginning of every month" and "conducts debt collection work that does not require legal training or a license to practice law," meaning that the work "is not properly characterized as work for which an 'attorney's fee' is recoverable under the tenants' leases with their landlords." Id. The plaintiffs further contend that the demands for attorney's fees also "mislead and confuse the tenants about the nature and seriousness of the situation." Id. Finally, the plaintiffs allege that Senex also "churns out unlawful detainers across Virginia against thousands of Virginians, with little to no attorney involvement for each action." Id. ¶ 19.

The plaintiffs contend that Senex's overall business model directly damages them by charging fees for each Notice, despite the fact that the Notices purport to come from the landlords, and not from attorneys. Id. ¶ 20. Senex's business model also results in "additional fees from multiple and repetitive court filings costly to both the plaintiffs and the courts." Id. Finally, Senex inappropriately "misleads and intimidates debtors by invoking the specter of meaningful attorney involvement," the plaintiffs assert. Id.

### B. The Individual and Class Action Claims

The Complaint raises both class action allegations against Senex and individual claims on behalf of plaintiffs Jennifer Lord, Ebony Reddicks, and Toniraye Moss. The plaintiffs maintain apartment leases in Roanoke and Hopewell, Virginia. Id. ¶¶ 26, 40, 54. Plaintiffs Lord and Reddick each allege receiving "by mail and by posting on [their] front door[s] a Notice of Noncompliance for alleged nonpayment of rent and fees" on multiple occasions.

3

Id. ¶¶ 27, 41.  Although "each mailed Notice listed a return address for Frontier Apartments and was purportedly signed by an employee of Frontier Apartments," Lord and Reddicks allege that "the Notice actually came from Senex."  Id. ¶¶ 28, 42.  Indeed, "the signature on each mailed Notice was digitally added in the Senex office . . . using Senex equipment.  Id. ¶¶ 29, 43.

Plaintiff Moss similarly alleges that she received "a Notice of Noncompliance, drafted by Senex, which was a collection letter for her alleged failure to pay rent, indicating the amount of past rent owed plus other fees."  Id. ¶ 57.  The Notice claimed that Moss owed her landlord $1,166 in rent, $50 in late fees, and $30 in attorneys' fees for generation of the Notice of noncompliance.  Id. ¶ 58.  Moreover, the Notice "did not indicate that it was sent by Senex, only that it was drafted by Senex."  Id.  ¶ 60.  And although the Notice appeared to be signed by her landlord, Moss contends that "the signature was digitally added to the Notice at the Senex office using Senex equipment."  Id. ¶¶ 61–62.  Moss alleges that the Notice "failed to indicate that the Notice was actually sent by Senex under the guise of [her landlord] and failed to include § 1692g language informing Ms. Moss that the true origin of the Notice was from a debt collector."  Id. ¶ 64.  The Notices also failed to give Moss notice of her rights under the FDCPA, she contends.  Id. ¶ 65.  Moss asserts she received additional Notices and letters reminding her of her outstanding rent payments and that her landlord, "through Senex counsel, filed two separate eviction lawsuits" against her that were either dismissed or nonsuited.  Id. ¶¶ 67, 69, 70, 71, 72, 75, 77, 78.

Plaintiffs Lord and Reddicks also allege that the Notices Senex sent them failed to give notice of their rights under the FDCPA.  Id. ¶¶ 30, 44.  They assert that each Notice Senex

sent them described an amount of rent owed as of a specified date, "along with a late fee of $100, substantially more than a late fee of 10% of the monthly rent allowed under the terms of the lease." Id. ¶¶ 31, 45.  The Notices also claimed that Ms. Lord and Ms. Reddicks owed $30 in "Attorney Fees (Notice of Noncompliance)" for each Notice issued.  Id. ¶¶ 32, 46. However, this $30 "Attorney Fees" charge covered Senex's providing only "boilerplate notices that any non-attorney debt collector could complete, print, and deliver to a tenant," as the preparer only had to "fill in the name, address, date, and amounts allegedly due on the boilerplate notice." Id.  ¶¶ 33, 47.

Senex also filed four unlawful detainer summonses against Ms. Lord and three unlawful detainer summonses against Ms. Reddicks.  Id. ¶¶ 34, 48.  Each summons claimed (1) an immediate right to possession of their apartments due to unpaid rent, and (2) a charge of $100 in attorney fees for preparing and filing the unlawful detainer, despite the fact that the Notice indicated that only $70 in attorney fees would be charged.  Id. ¶¶ 35, 49.  Lord and Reddicks both assert that "[a]side from the act of signing the Unlawful Detainer as counsel for its landlord clients, there is no meaningful attorney involvement in the filing of the Unlawful Detainers," meaning the $100 fee thus "greatly overstated the nature of attorney involvement." Id. ¶¶ 36, 50.  Lord and Reddicks finally allege that immediately after Senex entered the attorney fees charges on their accounts, "the attorney fees became rent owed by [Plaintiffs Lord and Reddicks], even though the fill-in-the form unlawful detainer had not yet been filed with court." Id. ¶¶ 38, 52.

Finally, the Complaint raises class action allegations pursuant to Federal Rule of Civil Procedure 23(b)(3).  The Complaint asserts the following questions of law and fact common to the class:

> a.    Whether class members received Notices which threatened eviction upon nonpayment of fees and alleged past due rent, and which purported to come from Landlords but in fact were drafted and sent by Senex misleadingly to convey meaningful attorney involvement;
> b.    Whether these Notices were required by the FDCPA to contain certain notices and information and to refrain from using certain means and methods of debt collections and violated these requirements;
> c.    Whether Defendant filed unlawful detainers against class members without meaningful attorney involvement;
> d.    [T]he actual damages of the members of the class, including the payment of attorneys' fees not properly owed to the Landlord; and
> e.    Whether Senex failed to promulgate processes and procedures sufficient to ensure the Notices were accurate and legal.

## C.  Procedural History

The plaintiffs filed this action on September 9, 2020.  ECF No. 1.  On October 28, 2020, Senex moved to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 6.  The Honorable Glen E. Conrad, Senior United States District Judge, held a telephonic hearing on the motion on February 19, 2021.  On March 5, 2021, Senex filed a supplemental brief in support of its motion to dismiss.  ECF No. 28.  The plaintiffs filed a response thereto on March 10, 2021.  ECF No. 29.  On May 11, 2021, the case was transferred to this court.  ECF No. 30.  The court has reviewed the pleadings and the hearing transcript, and the matter is ripe for decision.

## II.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  A claim is plausible if the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

Moreover, "[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; 'importantly, [the motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  Beacon Wireless Solutions, Inc. v. Garmin Intern., Inc., No. 5:11-cv-00025, 2011 WL 4737404, at *7 (W.D. Va. Oct. 5, 2011) (quoting McBurney v. Cucinnelli, 616 F.3d 393, 408 (4th Cir. 2010) (Agee, J., concurring in part and dissenting in part)) (second alteration in original).  "Thus, the proper inquiry is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support its claims."  Id. (internal quotation marks and alteration omitted).

### III.    Discussion

"The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." Crawford v. Senex Law, P.C., 259 F. Supp. 3d 464, 468 (W.D. Va. 2017) (quoting Yarney v. Ocwen Loan Serv., LLC, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013)). Moreover, "[t]he FDCPA is a strict liability statute that prohibits false or deceptive representations in collecting a debt, as well as certain abusive debt collection practices." McLean v. Ray, 488 F. App'x 577, 682 (4th Cir 2012). "Attorneys seeking the repayment of a debt on behalf of a client are debt collectors within the ambit of the FDCPA." Id. (citing Heintz v. Jenkins, 514 U.S. 291, 292 (1995)).

A plaintiff must plead the following to establish a violation of the FDCPA: (1) that the plaintiff is a "consumer" as defined by the FDCPA; (2) that the defendant is a "debt collector" as defined by the FDCPA; and (3) that the defendant engaged in any act or omission in violation of the FDCPA. Crawford, 259 F. Supp. 3d at 468. Senex first argues that it does not constitute a debt collector and is thus not subject to the FDCPA. But even if it is a debt collector for purposes of the FDCPA, Senex contends that the claims asserted in the Complaint still cannot survive the motion to dismiss.

### A.  Debt Collector

As a preliminary matter, Senex argues that the Complaint fails in its entirety because it is not a debt collector and therefore not subject to the FDCPA. The FDCPA applies only to "debt collectors," or "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who

8

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  Senex offers two key arguments for why it is not a debt collector under the FDCPA.  First, Senex contends that the Notices it sends on behalf of its landlord clients are, as a matter of law, the landlords' Notices and not Senex's.  Second, Senex contends that in sending the Notices, it performs only ministerial tasks on behalf of the landlords that do not rise to debt collection under the FDCPA.  For the following reasons, the court disagrees, and finds that the plaintiffs have pleaded sufficient facts alleging that Senex operates as a debt collector subject to the FDCPA.

Senex first argues that because the Notices "are on the landlord's letterhead and are electronically signed by each landlord, . . . the Notices are communications from the landlords who are not subject to the FDCPA."  Def.'s Reply Br. 4–5, ECF No. 13.  The Virginia Uniform Electronic Transactions Act stipulates that "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person," which "may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable."  Va. Code Ann. § 59.1-487 (2021).  Senex posits that the electronic signatures and landlord letterhead render the Notices attributable only to the landlords.

In Crawford, a court in this district addressed a nearly identical argument that Senex raised on a Rule 12(b)(6) motion to dismiss.  In that matter, Senex similarly argued that the noncompliance notices it sent out were "from the landlords—not Senex" because "under Virginia law, an electronic signature is valid."  Id. at 472.  The court instead concluded, however, that "the more relevant question is whether Senex drafts, prepares, prints, and has

the Notices served." Id.  Because the complaint contained these factual allegations, the court

concluded that the plaintiffs adequately pleaded that Senex acted as a debt collector when it

prepared and transmitted the noncompliance notices.  On Senex's subsequent motion for

judgment on the pleadings, the court again rejected Senex's argument "that the landlord's

electronic signature establishes, as a matter of law, that the Notices are the act of the landlord

. . . ." Crawford v. Senex Law, P.C., No. 3:16-cv-73, 2017 WL 5162821, at *5 (W.D. Va. Nov.

7, 2017).  Instead, the court reiterated its opinion "that the more relevant inquiry is whether

Senex drafts, prepares, prints, and has the Notices served." Id. (internal quotation marks and

citation omitted.)

The court sees little material difference between the present case and Crawford.  As in

Crawford, the plaintiffs here allege that Senex drafts, prepares, prints, and sends the Notices

directly to the tenants. See Compl. ¶ 14.  Indeed, the Notices—three examples of which Senex

attached as exhibits to its reply brief—themselves state that Senex has "already drafted this

notice and provided legal advice due to [the tenant's] noncompliance."[1] Def.'s Reply Br. Ex.

A–C.  Moreover, the court notes that the Notices attached to Senex's reply brief in this matter

appear virtually identical to those attached to the complaint in Crawford.  Compare Def.'s

---

[1] The court "may consider a document submitted by the movant that was not attached to or incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A "necessary prerequisite" to finding that a document is integral to the complaint is the "plaintiff's reliance on the terms and effect of [the] document in drafting the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where plaintiff has actual notice and has relied upon these documents in framing the complaint." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F. 3d 212, 234 (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (cleaned up).  Because the Notices attached as exhibits to Senex's reply brief are integral to the complaint and the plaintiffs have not contested their authenticity, the court may consider them in deciding the motion to dismiss.

Reply Br. Ex. A–C, with Compl. Ex. A–C, E–J, L–U, No. 3:16-cv-73, ECF No. 1-2. Similarities aside, the court concludes that the plaintiffs here have adequately pleaded that Senex acts as a debt collector in sending the Notices and will deny the motion to dismiss on this basis.

Senex next asserts that the only action it takes that directly concerns the plaintiffs is its "ministerial act" of mailing its landlord clients' electronically signed Notices.  Def.'s Mem. Supp. Mot. Dismiss 8, ECF No. 7.  "It is well settled that companies that perform ministerial duties such as stuffing and printing the debt collector's letters are not debt collectors for purposes of the FDCPA."  Crawford, 259 F. Supp. 3d at 469 (cleaned up).  To this end, the Crawford court identified six factors "material to the determination of whether a sender engages in merely ministerial functions, rendering it not subject to the FDCPA, or whether the sender is actively collecting debt for another."  Id. at 470.  They include:

> (1) whether the sender instructs the debtor to contact the sender or the creditor about the debt; (2) whether the sender was substantially involved in the drafting of the letter; (3) whether the sender provides follow-up debt collection services; (4) the extent to which the sender can settle the matter; (5) the compensation structure for the sender; and (6) the extent to which the sender keeps its own records regarding the debtors.

Id.

In Crawford, the court applied the six factors and concluded that two weighed in favor of Senex: (1) the letters instructed tenants to contact the landlords about the outstanding debt, and (2) the plaintiffs did not allege that Senex had any authority to settle the dispute at the initial stage.  Id. at 471.  The court ultimately found, however, that more factors weighed in favor of the plaintiffs' contention that Senex acted as a debt collector.  First, the plaintiffs

"alleged that Senex drafts, sends and administers the [n]otices," an allegation "bolstered by the fact that each [n]otice contains virtually identical text, despite the [n]otices allegedly coming from different landlords." Id. Second, the court inferred from the complaint "that the landlords merely passively provide Senex with the debtor's contact information, and Senex then institutes the collection efforts, which includes everything from sending the initial communications to filing the unlawful detainer actions." Id. Third, the notices' text indicated "that Senex charges attorney's fees for sending the letter, and is not paid per letter sent." Id. Finally, Senex conceded that it commenced unlawful detainer actions on behalf of the landlords. Id. Against this backdrop, the court concluded that under Rule 12(b)(6) the plaintiffs alleged sufficient facts showing that Senex's actions went beyond mere ministerial work, rendering it subject to the FDCPA as a debt collector. Id. at 473.

Here, the court again finds that more factors suggest Senex acts as a debt collector when it transmits the Notices. As in Crawford, the Notices instruct the tenants to contact the landlord concerning the unpaid rent, and the complaint does not allege that Senex has the authority to settle dispute on behalf of the landlord. However, the complaint alleges—and the Notices themselves state—that Senex drafts the Notices, meaning that Senex was certainly "substantially involved in the drafting of the [Notices.]" Id. at 470; Compl. ¶ 17; Def.'s Reply Br. Ex. A–C. Moreover, the complaint does not allege that Senex is paid per letter sent, and the Notices state that Senex earns attorney's fees for preparing the notices and for "providing legal advice due to [the tenant's] noncompliance." Compl. ¶ 17; Def.'s Reply Br. Ex. A–C. Finally, the complaint alleges that Senex saves the debtor-tenants' information in its records so it can later institute unlawful detainer actions against them. Compl. ¶ 14. Four of the six

factors therefore suggest that in sending the Notices, Senex completes more than just ministerial work and instead acts as a debt collector.  The complaint therefore sufficiently alleges that Senex acts as a debt collector and is therefore subject to the FDCPA.

### B. Individual Claims

Senex next argues that even if the court does find that it acts as a debt collector, each claim asserted in the complaint is still unable to withstand scrutiny under Rule 12(b)(6).  The court will address each claim in turn.

### i.      §§ 1692e(11) and 1692(g)

The complaint alleges Senex violated 15 U.S.C. §§ 1692e(11) by failing to notify the plaintiffs in the Notices that it was attempting to collect a debt and would use any information it obtained for that purpose.  In moving to dismiss, Senex argues only that the claims fail because the Notices come from the landlords, and not Senex.  Having already rejected this argument, the court will deny the motion to dismiss on these claims.

### ii.      § 1692e(10), (14)

The complaint alleges that Senex violated § 1692e(10) and (14).  Compl. ¶¶ 95–97.  Section 1692e generally bars a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Sections 1692e(10) and (14) more specifically prohibit "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" and "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization," respectively.

"Whether a communication is false, misleading, or deceptive in violation of § 1692e is determined from the vantage of 'the least sophisticated consumer.'"  Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 394 (4th Cir. 2014) (quoting United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996)).  This is "an objective standard that evaluates how the least sophisticated consumer would interpret the allegedly offensive language."  Id. at 395.  The false, deceptive, and misleading statements must therefore be "material" to be actionable under the FDCPA.  Powell v. Palisades Acquisition XVI, LLC, 782 F.3d 119, 126 (4th Cir. 2014).  This "materiality requirement limits liability under the FDCPA to genuinely false or misleading statements that 'may frustrate a consumer's ability to intelligently choose his or her response.'"  Id. (quoting Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010)).  Only misrepresentations "that are important in the sense that they could objectively affect the least sophisticated consumer's decisionmaking . . . in deciding how to respond to efforts to collect the debt" are material.  Id. at 126, 127.  Lastly, and crucial to the parties' arguments on this issue, "the test is the capacity of the statement to mislead; evidence of actual deception is unnecessary."  Nat'l Fin. Servs., Inc., 98 F.3d at 139.

In moving to dismiss, Senex argues that the complaint fails to state a claim for violation of § 1692e(10) and (14) because even if Senex's use of landlord letterhead and landlord signatures was false or misleading, it was not material.  In support, Senex points out that (1) Plaintiffs Lord and Reddick do not allege that they took any action after receiving the Notices, and (2) Plaintiff Moss does not allege that had she known the Notices were from Senex she would not have chosen to pay her landlord.  The court does not agree.

14

The complaint alleges Senex violated § 1692e(10) by (1) making deceptive "misrepresentations about an attorney having been retained and having performed meaningful attorney work in connection with that specific case," and (2) misrepresenting its "true role . . . in drafting, sending, and administering the Notices." Compl. ¶¶ 96, 97. The complaint further asserts that Senex violated § 1629e(14) by preparing and issuing Notices that deceptively "purported to come from Landlords" but actually came from Senex. Id. ¶ 95. These alleged misrepresentations, taken as true, certainly could have been "important" in affecting how the least sophisticated consumer would respond to Senex's Notices.

First, and as the plaintiffs persuasively argue, had Senex made clear that the Notices came from a debt collector, it would have been obligated to inform the tenants of their dispute and validation rights under § 1692g. Section 1692g(a) stipulates that within five days of sending the initial notice to a debtor, a debt collector must send a written notice to the debtor containing, inter alia, both "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector" and "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector." Notice of these rights would certainly be important to a consumer in determining how to respond to the Notice.

Senex's alleged misrepresentations as to the amount of meaningful legal work it performed on behalf of the landlord clients would also be important to a consumer responding

to a Notice.  The Complaint alleges that although each Notice indicates that Senex drafted the Notices "and provided legal advice due to [the tenant's] noncompliance," Senex instead only "conducts debt collection work that does not require legal training or a license to practice law, and thus is not properly characterized as work for which an 'attorney's fee' is recoverable under the tenants' leases with their landlords."  Compl. ¶ 18.  The Complaint further alleges that the Notices' assertions regarding attorney involvement and demands for attorney's fees "mislead and confuse the tenants about the nature and seriousness of the situation."  Id.  Taken as true, these alleged misrepresentations could impact the way that the least sophisticated consumer would respond and discourage such a consumer from disputing the fees assessed in the Notices.

Finally, given that "the test is the capacity of the statement to mislead; evidence of actual deception is unnecessary," Senex's arguments concerning the plaintiffs' actual responses to the Notices are inapposite.  Nat'l Fin. Servs., Inc., 98 F.3d at 139.  The court will accordingly deny the motion to dismiss as to Senex's alleged violations of § 1692e(10) and (14).

### iii.    § 1692e(3), (9)

The complaint also asserts that Senex acted in contravention of § 1692e(3) and (9), again by making deceptive "misrepresentations about an attorney having been retained and having performed meaningful attorney work in connection with that specific case . . . ."  Compl. ¶ 97.  Section 1692e(3) bars a debt collector from falsely representing or implying "that any individual is an attorney or that any communication is from an attorney."  Section 1692e(9), on the other hand, prohibits a debt collector from "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized,

issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." Senex asserts that the Complaint fails to state a claim for violation of either provision. For the following reasons, the Court agrees, and will dismiss the alleged violations.

The complaint itself alleges that the Notices are sent "under the guise of [the] Landlord" and "indicate that the Landlord has now retained Senex, which drafted the Notices and 'provided legal advice due to [the tenant's] noncompliance.'" Compl. ¶¶ 17, 18. The Complaint further alleges that the Notices "still purport to come from the Landlord." Id. Given that the Notices come "under the guise of [the] Landlord" and expressly state that Senex, a law firm, has both drafted the Notices and "provided legal advice," the court sees no possible false implication in the Notices, as alleged in the complaint, that an individual is an attorney or that a communication is from an attorney. Moreover, the complaint fails to allege that the Notices simulate or represent to be official documents approved by a court or a federal or state agency. The court will therefore dismiss all claims for violations of § 1692e(3) and (9). See Compl. ¶ 97.

### iv.    §§ 1692e(2)(A)−(B), 1692f(1)

Next, the complaint alleges that Senex violated both § 1692e(2)(A) and (B) and § 1692f(1) by falsely and deceptively issuing Notices that "misrepresented the work performed by Senex in connection with preparing and sending the Notices as work for which an attorney's fee was properly chargeable." Compl. ¶ 99. Sections 1692e(2)(A) and (B) respectively bar false mischaracterizations of "the character, amount, or legal status of any debt" and "any services rendered or compensation which may be lawfully received by any debt

17

collector for the collection of a debt." Section 1692f(1) prohibits a debt collector's "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Senex argues that it did not violate § 1692e(2)(A) and (B) because (1) "[i]t is not up to Plaintiffs to decide whether Senex employs an attorney or non-attorney to 'generate' the Notices that are required by law" and (2) the $30 attorney's fee is de minimis.  Def.'s Mem. Supp. Mot. Dismiss 19–20.  Senex also argues that its alleged § 1692f(1) violation cannot survive the motion to dismiss because it "is derivative of the purported violations of 1692e." Id. at 21.  The court will address each argument in turn.

Several courts have found that a debt collector's unlawful pursuit of attorney's fees from a debtor can violate § 1692e(2).  In Foster v. D.B.S. Collection Agency, the United States District Court for the Southern District of Ohio held that a debt collector's request for attorney's fees in a state court complaint against a debtor violated § 1692e(2)(B) because the fees were not recoverable under Ohio law.  463 F. Supp. 2d 783, 802 (S.D. Oh. 2006).  And in McCollough v. Johnson, Rodenburg & Lauinger, LLC, the United States Court of Appeals for the Ninth Circuit affirmed a district court's finding that a debt collector violated both § 1692e(2) and § 1692f(1) by seeking attorney's fees that it was not entitled to seek.  637 F.3d 939, 949–50 (9th Cir. 2011);  see also Fetters v. Paragon Way, Inc., No. 1:10-cv-00904, 2010 WL 5174989, at *3–*4 (M.D. Pa. Dec. 15, 2010) (noting that "when a debt collector asserts that there is an obligation to be paid, whether true or not, the protections of the FDCPA are triggered").

18

In the instant matter, the complaint alleges that Senex completes "debt collection work that does not require legal training or a license to practice law, and is thus not properly characterized as work for which an 'attorney's fee' is recoverable under the tenants' leases with their landlords."  Compl. ¶ 18.  Moreover, Senex "churns out unlawful detainers across Virginia against thousands of Virginians, with little to no attorney involvement for each action."  Id. ¶ 19.  These allegations, construed as true, point to both (1) a "false, deceptive, or misleading representation or means in connection with the collection of any debt" in violation of § 1692e(2), and (2) the use of an unfair debt collection practice by attempting to collect an unauthorized fee, in violation of § 1692f(1).

Moreover, although the Fourth Circuit has not clearly articulated what constitutes an unactionable "de minimis" mischaracterization of the debt owed, the court rejects Senex's argument that its assertion of a $30 attorney's fee in the Notices is de minimis.  See Powell, 782 F.3d at 119 ("[A] de minimis misstatement of the total amount owed might not be actionable, although we need not determine the threshold here.").  The complaint alleges that the Notices' demands for attorney's fees "mislead and confuse the tenants about the nature and seriousness of the situation."  Compl. ¶ 18.  And as the plaintiffs persuasively argue, for some tenants, an extra $30 charge is all but "de minimis."  Simply put, dismissal on this ground would be premature at the Rule 12(b)(6) stage.  The court will accordingly deny the motion to dismiss the complaint's asserted claims under § 1692e(2)(A)–(B).  See Compl. ¶ 99.

The complaint's § 1692f(1) claim, however, cannot survive the motion to dismiss.  The Fourth Circuit has held that because "courts use § 1692f to punish conduct that [the] FDCPA does not specifically cover," a plaintiff alleging violation of § 1692f may not "rely on conduct

that is covered by § 1692e" without "alleg[ing] any separate or distinct conduct to support a § 1692f violation." Lembach v. Bierman, 528 F. A'ppx. 297, 304 (4th Cir. 2013), abrogated on other grounds by Rotkiske v. Klemm, 140 S. Ct. 355 (2019); see also Walker v. Hill, No. 3:20cv149, 2021 WL 1062238, at *10 (E.D. Va. Mar. 19, 2021) ("Because courts use § 1692 to punish conduct that FDCPA does not specifically cover, a § 1692f cause of action may not be based on the same alleged misconduct that undergirds a § 1692e claim.") (cleaned up).  The complaint's § 1692f(1) claim impermissibly relies on the same alleged conduct as the § 1692e(2)(A)–(B) claim.  See Compl. ¶ 99.  The court will accordingly dismiss the complaint's claim for violation of § 1692f(1).  See id.

> ### v.  § 1692e(5)

Finally, the complaint alleges Senex violated § 1692e(5).  See Compl. ¶ 101. "[C]ollection notices violate § 1692e(5) if (1) a debtor would reasonably believe that the notices threaten legal action; and (2) the debt collector does not intend to take legal action.  Nat'l Fin. Servs., 98 F.3d at 136.  Here, the complaint itself alleges that Senex has filed unlawful detainer actions on behalf of its landlord clients, including four against Plaintiff Jennifer Lord, three against Plaintiff Ebony Reddicks, and two against Plaintiff Toniraye Moss.  Compl. ¶¶ 35, 48, 77.  The plaintiffs therefore cannot plausibly argue that Senex "does not intend take legal action," and the court will dismiss the complaint's § 1692e(5) claim.  See Compl. ¶ 101.

> ## C.  Pleading Standard

Senex lastly asserts that because "all but one of Plaintiffs' claims arises under 15 U.S.C. [§] 1692e," (1) Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies and (2) the complaint is not pled with the sufficient particularity to withstand the motion to

dismiss.  Def.'s Mem. Supp. Mot. Dismiss 22–24.  Under Rule 9(b), a party alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The required "circumstances" are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks and citation omitted).

In Crawford, Senex raised the same such argument.  259 F. Supp. 3d at 473.  After finding "a split . . . among district courts across the country" as to whether Rule 9(b) or Rule 8(a) applies to claims brought under the FDCPA, the court concluded that the plaintiffs pled the complaint with the requisite particularity under Rule 9(b) and declined to determine which standard applies.  Id. at 473–74.  Indeed, the complaint "contain[ed] specific allegations of fact as to each plaintiff," that each notice the plaintiffs received "was sent by Senex . . . 'under the guise' of the landlord, 'purportedly signed by a staff member' of the landlord, and fail[ed] to 'indicate that the Notice was sent by Senex.'"  Id. at 474.  The complaint also pled both the date that the plaintiffs received the notices and "that the return address was actually that of Senex, not the landlord, despite the letter appearing to originate with the landlord."  Id.  The court accordingly denied Senex's motion to dismiss on this basis.  Id.

Here, the court will similarly refrain from deciding whether Rule 9(b) or 8(a) governs claims alleging FDCPA violations, as the complaint satisfies Rule 9(b)'s heightened requirement.  The complaint alleges that each Notice was affixed on landlord letterhead, "purportedly signed by a staff member of Landlord, when in fact the signature was affixed at Senex's office using Senex equipment," and mailed by Senex.  Compl. ¶ 16.  The complaint

also alleges that although the Notices indicate that Senex drafted the Notices, they "still purport[ed] to come from the [l]andlord, despite the fact that they were prepared by Senex." Id. ¶ 17.  Finally, the complaint asserts that the Notices were "false, deceptive, misleading, and unfair," in that they "purportedly came from the Landlords, when in fact they came from Senex," misrepresented the nature of the services Senex provided and the compensation Senex was entitled to, "used a name other than Senex's name in connection with the collection of a debt," and untruthfully conveyed that "meaningful attorney involvement" was relied on in preparing and sending the Notices.  Id. ¶ 23.  In sum, even under Rule 9(b)'s heightened requirements, the complaint is pled with sufficient particularity, and dismissal is not warranted on this basis.

## Conclusion

For the reasons stated, Senex's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.  The court will dismiss the complaint's claims for violation of 15 U.S.C. § 1692e(3), (5), and (9), and § 1692f(1).  See Compl. ¶¶ 97, 101.  All other claims survive the motion to dismiss.  The clerk is directed to send copies of this memorandum opinion and accompanying order to all counsel of record.  An appropriate order will be entered.

It is so **ORDERED**.

Entered:  August 12, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.08.12 14:49:17
-04'00'

_____
Michael F. Urbanski
Chief United States District Judge