## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **JENNIFER LORD, <u>et al.</u>,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 7:20-cv-00541** |
| **v.** | ) | |
| | ) | |
| **SENEX LAW, P.C.,** | ) | By:   Michael F. Urbanski |
| **Defendant.** | ) | **Chief United States District Judge** |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on defendant Senex Law, P.C.'s motion for interlocutory appeal and stay of proceedings, ECF No. 37. For the reasons stated below, the court will **DENY** Senex's motion for interlocutory appeal and will **DENY as moot** Senex's motion to stay proceedings pending appeal.

## I. Background[1]

### A. Senex Law, P.C.

Senex is a law firm that serves multifamily housing owners and property managers and helps send tenants Notices related to debt collection and eviction proceedings. Compl., ECF No. 1, at ¶ 11. Multifamily rental properties hire Senex to collect on residents' past due rent payments. <u>Id.</u> at ¶ 13.

Plaintiffs describe Senex's business model as follows. First, a landlord sends Senex a list of accounts for which a debt is allegedly past due. <u>Id.</u> at ¶ 14. Next, Senex prepares a noncompliance dunning letter (the "Notices") on landlord letterhead before printing and sending the Notice directly to the tenant. <u>Id.</u> Senex saves each tenant's information in its

---

[1] Many of the facts in this section are taken from the court's August 16, 2021 Memorandum Opinion, ECF No. 31.

proprietary debt collection software so that it can quickly generate detainer pleadings. Id. The initial Notice Senex sends "is thus the first step in Senex's seamless, integrated debt collection machine." Id.

Plaintiffs maintain that Senex attempts to collect tenants' past-due rent by sending the tenants the Notices and other correspondence. Id. at ¶ 15. While each Notice that the plaintiffs received was issued on landlord letterhead and was "purportedly signed by" a landlord's staff member, each signature was in reality "affixed at Senex's office using Senex equipment." Id. at ¶ 16. The plaintiffs allege that Senex mailed each Notice "in an envelope bearing date-stamped postage from NEOPOST account, zip code 23663, the same account used for notices mailed by Senex, as opposed to the zip codes where the various Landlords are located." Id.

Per the complaint, the Notices indicate that the landlord has retained Senex, who "already drafted this notice and provided legal advice due to [the plaintiff's] noncompliance." Id. at ¶ 17. The Notices also "still purport to come from the Landlord, despite the fact that they were prepared and sent by Senex." Id. Moreover, in each Notice at issue, "under the guise of Landlord, plaintiffs were charged 'attorneys' fees,' typically thirty dollars." Id. at ¶ 18. The plaintiffs contend, however, that Senex's work "is not legal in nature, but rather standard debt collection tasks routinely performed by non-attorney debt collectors." Id. Indeed, Senex "churns out a very high volume of Notices each month in a short time frame at the beginning of every month" and "conducts debt collection work that does not require legal training or a license to practice law," meaning that the work "is not properly characterized as work for which an 'attorney's fee' is recoverable under the tenants' leases with their landlords." Id. The plaintiffs further contend that the demands for attorney's fees also "mislead and confuse the

tenants about the nature and seriousness of the situation." Id. Finally, the plaintiffs allege that Senex also "churns out unlawful detainers across Virginia against thousands of Virginians, with little to no attorney involvement for each action." Id. at ¶ 19.

Plaintiffs contend that Senex's overall business model directly damages them by charging fees for each Notice, even though the Notices purport to come from the landlords, and not from attorneys. Id. at ¶ 20. Senex's business model also results in "additional fees from multiple and repetitive court filings costly to both the plaintiffs and the courts." Id. Finally, plaintiffs assert that Senex inappropriately "misleads and intimidates debtors by invoking the specter of meaningful attorney involvement[.]" Id.

**B. Individual and Class Action Claims**

The Complaint raises both class action allegations against Senex and individual claims on behalf of plaintiffs Jennifer Lord, Ebony Reddicks, and Toniraye Moss. The plaintiffs maintain apartment leases in Roanoke and Hopewell, Virginia. Id. at ¶¶ 26, 40, 54. Plaintiffs Lord and Reddick each allege receiving "by mail and by posting on [their] front door[s] a Notice of Noncompliance for alleged nonpayment of rent and fees" on multiple occasions. Id. at ¶¶ 27, 41. Although "each mailed Notice listed a return address for Frontier Apartments and was purported signed by an employee of Frontier Apartments," Lord and Reddicks allege that the "Notice actually came from Senex." Id. at ¶¶ 28, 42. Indeed, "the signature on each mailed Notice was digitally added in the Senex office . . . using Senex equipment." Id. at ¶¶ 29, 43.

Moss similarly alleges that she received a "Notice of Noncompliance, drafted by Senex, which was a collection letter for her alleged failure to pay rent, indicating the amount of past

rent owed plus other fees." <u>Id.</u> at ¶ 57. The Notice claimed that Moss owed her landlord $1,166 in rent, $50 in late fees, and $30 in attorneys' fees for generation of the Notice of noncompliance. <u>Id.</u> at ¶ 58. Moreover, the Notice "did not indicate that it was sent by Senex, only that it was drafted by Senex." <u>Id.</u> at ¶ 60. And although the Notice appeared to be signed by her landlord, Moss contends that "the signature was digitally added to the Notice at the Senex office using Senex equipment." <u>Id.</u> at ¶¶ 61-62. Moss alleges that the Notice "failed to indicate that the Notice was actually sent by Senex under the guise of [her landlord] and failed to include § 1692g language informing Moss that the true origin of the Notice was from a debt collector." <u>Id.</u> at ¶ 64. She also contends that the Notices failed to give her notice of her rights under the Fair Debt Collection Practices Act ("FDCPA"). <u>Id.</u> at ¶ 65. Moss asserts she received additional Notices and letters reminding her of her outstanding rent payments and that her landlord, "through Senex counsel, filed two separate eviction lawsuits" against her that were either dismissed or nonsuited. <u>Id.</u> at ¶¶ 67, 69-72, 75, 77-78.

Lord and Reddicks also allege that the Notices Senex sent them failed to give notice of their rights under the FDCPA. <u>Id.</u> at ¶¶ 30, 44. They assert that each Notice Senex sent them described an amount of rent owed as of a specified date, "along with a late fee of $100, substantially more than a late fee of 10% of the monthly rent allowed under the terms of the lease." <u>Id.</u> at ¶¶ 31, 45. The Notices also claimed that Lord and Reddicks owed $30 in "Attorney Fees (Notice of Noncompliance)" for each Notice issued. <u>Id.</u> at ¶¶ 32, 46. However, this $30 "Attorney Fees" charge covered Senex's providing only "boilerplate notices that any non-attorney debt collector could complete, print, and deliver to a tenant," as the

preparer only had to "fill in the name, address, date, and amounts allegedly due on the boilerplate notice." Id. at ¶¶ 33, 47.

Senex also filed four unlawful detainer summonses against Lord and three unlawful detainer summonses against Reddicks. Id. at ¶¶ 34, 48. Each summons claimed (1) an immediate right to possession of their apartments due to unpaid rent, and (2) a charge of $100 in attorney fees for preparing and filing the unlawful detainer, even though the Notice indicated that only $70 in attorney fees would be charged.  Id. at ¶¶ 35, 49.  Lord and Reddicks both assert that "[a]side from the act of signing the Unlawful Detainer as counsel for its landlord clients, there is no meaningful attorney involvement in the filing of the Unlawful Detainers," meaning the $100 fee thus "greatly overstated the nature of attorney involvement." Id. at ¶¶ 36, 50. Lord and Reddicks finally allege that immediately after Senex entered the attorney fees charges on their accounts, "the attorney fees became rent owed by [Lord and Reddicks], even though the fill-in-the form unlawful detainer had not yet been filed with court." Id. at ¶¶ 38, 52.

## C. Procedural History

Plaintiffs brought suit on September 9, 2020. ECF No. 1. On October 28, 2020, Senex moved to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging, among other things, that plaintiffs' claims fail as a matter of law because is not a debt collector and, therefore, is not subject to the FDCPA. ECF No. 6. Plaintiffs opposed. ECF No. 29. On May 11, 2021, the case was transferred to this court, ECF No. 30, and on August 16, 2021, the court granted in part and denied in part Senex's motion to dismiss. Order, ECF No. 32. In relevant part, the court rejected Senex's argument that

Senex, as a matter of law, was not a debt collector and was not subject to the FDCPA. See Mem. Op., ECF No. 31, at 8-13.

Senex now brings a motion to permit an interlocutory appeal and stay, asserting that the court erred in its August 16, 2021 Memorandum Opinion as to answering a fundamental, threshold question of law: "whether the application of the Virginia Uniform Electronic Transactions Acts (UETA) precludes Senex from liability for the claims asserted against it." ECF No. 48 at 1; see also ECF No. 38 at 4. Plaintiffs oppose. ECF No. 45. The court heard argument on October 7, 2021, and the matters are ripe for resolution.

## II. Standard of Review

The statute allowing interlocutory appeals provides in relevant part the following:

> When a district judge, in making a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order[.]

28 U.S.C. § 1292(b). As described in the statute, a court may only grant leave to file when (1) the order involves a controlling question of law; (2) about which there is a substantial ground for difference of opinion; and (3) immediate appeal would materially advance the termination of the litigation. Fannin v. CSX Transp., Inc., 873 F.2d 1438, 1989 WL 42583, at *2 (4th Cir. 1989) (unpublished) (per curiam). Interlocutory review is an extraordinary remedy not to be granted lightly. Id. A party seeking leave to file an interlocutory appeal must establish all three elements to obtain the appeal. Arenholz v. Bd. of Trustees of the Univ. of Illinois, 219 F.3d

674, 676 (7th Cir. 2000); <u>see also</u> <u>Riley v. Dow Corning Corp.</u>, 876 F. Supp. 728, 731 (M.D.N.C. 1992) ("The rule requires strict adherence to all statutory requirements before certification will be allowed."). Moreover, "[i]nterlocutory appeal should not be sought 'to provide early review of difficult rulings in hard cases.'" <u>Lynn v. Monarch Recovery Mgmt., Inc.</u>, 953 F. Supp. 2d 612, 623 (D. Md. 2013) (quoting <u>Abortion Rts. Mobilization, Inc. v. Regan</u>, 552 F. Supp. 364, 366 (S.D.N.Y. 1982)). The court will address each element in turn.

### III. Analysis

### 1.      Controlling Question of Law

There is no set formula for determining what constitutes a "controlling question of law." <u>State of North Carolina ex rel. Howes v. W.R. Peele, Sr. Trust</u>, 889 F. Supp. 849, 852 (E.D.N.C. 1995). "At the very least, a question is controlling if its incorrect disposition would require a reversal of a final judgment for further proceedings." <u>Id.</u> (citing 16 Wright, <u>et al.</u>, <u>Federal Practice and Procedure</u> § 3930 at 159). Conversely, a question is clearly not controlling if the litigation would necessarily continue regardless of how the question is decided. <u>Id.</u> A controlling question must be narrow and an "abstract" legal issue "that the court of appeals can decide quickly and cleanly." <u>U.S. ex rel. Michaels v. Agape Senior Cmty., Inc.</u>, 848 F.3d 330, 340 (4th Cir. 2017) (quotations and citations omitted). Courts often seek a middle ground, finding that a question might be controlling even when its disposition might not lead to reversal on appeal if interlocutory reversal might save time for the district court and time and expense for the litigants. <u>Id.</u>

At base, Senex contends that the controlling question of law here is whether the "application of the UETA preclude[s] Senex from liability?" ECF No. 38 at 11. Senex asserts

that this question is purely legal because "[a] 'fact-bound,' multi-factor test announced in Crawford[v. Senex Law, P.C., No. 3:16-cv-73, 2017 WL 5162821 (W.D. Va. Nov. 7, 2017)], is not necessary when UETA is dispositive of the threshold question of who owns the Notice for all legal purposes, including under the FDCPA." ECF No. 48 at 3; see also Hairston v. Whitehorn & Delman, No. 97 Civ. 3015 (JSM), 1998 WL 35112, at *3 (S.D.N.Y. Jan. 30, 1998) (stating that the FDCPA applied where a law firm sent letters for rent on behalf of its landlord client and the letters were not on letterhead or signed by the landlord herself but also noting that "the conflict [between the state law's expedited 20-day validation period and the FDCPA's 30-day validation period] can be avoided if the landlord herself signs and sends these letters to the tenants, as permitted under [the state law]. The FDCPA would not apply to such a landlord because she would not be collecting the debt of another but rather her own debt."); Amin v. Del Plata Inv. Grp., LLC, No. 20-cv-80697, 2020 WL 3256862, at *2-3 (S.D. Fla. June. 15, 2020) (applying Florida law and holding the same); Romea v. Heiberger & Assocs., 988 F. Supp. 715, 718 (S.D.N.Y. 1998) (granting an interlocutory appeal and noting that "[t]he alternative would be for their landlord clients either to use lawyers who do not serve many three-day notices or [for the landlords] to serve the notices themselves. Either of these options would permit service of three-day notices because neither the lawyers occasionally serving such notices nor the landlords themselves are debt collectors subject to the statute[ ]") (internal quotations omitted).

Plaintiffs oppose, stating that this court has previously ruled that this inquiry is a question of fact, and the court agrees. To be sure, the court's August 16, 2021 Memorandum Opinion states:

Senex argues that the Complaint fails in its entirety because it is not a debt collector and therefore not subject to the FDCPA. The FDCPA applies only to "debt collectors," or "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

. . .

Senex first argues that because the Notices "are on the landlord's letterhead and are electronically signed by each landlord, . . . the Notices are communications from the landlords who are not subject to the FDCPA." Def.'s Reply Br. 4–5, ECF No. 13. The Virginia Uniform Electronic Transactions Act stipulates that "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person," which "may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Va. Code Ann. § 59.1- 487 (2021). Senex posits that the electronic signatures and landlord letterhead render the Notices attributable only to the landlords.

In Crawford[ v. Senex, P.C., 259 F. Supp. 3d 464 (W.D. Va. 2017)], a court in this district addressed a nearly identical argument that Senex raised on a Rule 12(b)(6) motion to dismiss. In that matter, Senex similarly argued that the noncompliance notices it sent out were "from the landlords—not Senex" because "under Virginia law, an electronic signature is valid." Id. at 472. The court instead concluded, however, that "the more relevant question is whether Senex drafts, prepares, prints, and has the Notices served." Id. Because the complaint contained these factual allegations, the court concluded that the plaintiffs adequately pleaded that Senex acted as a debt collector when it prepared and transmitted the noncompliance notices. On Senex's subsequent motion for judgment on the pleadings, the court again rejected Senex's argument "that the landlord's electronic signature establishes, as a matter of law, that the Notices are the act of the landlord . . . ." Crawford, 2017 WL 5162821, at *5. Instead, the court reiterated its opinion "that the more relevant inquiry is whether Senex drafts, prepares, prints, and has the Notices served." Id. (internal quotation marks and citation omitted.)

The court sees little material difference between the present case and Crawford. As in Crawford, the plaintiffs here

allege that Senex drafts, prepares, prints, and sends the Notices directly to the tenants. See Compl. ¶ 14. Indeed, the Notices—three examples of which Senex attached as exhibits to its reply brief—themselves state that Senex has "already drafted this notice and provided legal advice due to [the tenant's] noncompliance." Def.'s Reply Br. Ex. A–C. Moreover, the court notes that the Notices attached to Senex's reply brief in this matter appear virtually identical to those attached to the complaint in Crawford. Compare Def.'s Reply Br. Ex. A–C, with Compl. Ex. A–C, E–J, L–U, No. 3:16-cv-73, ECF No. 1-2.

. . .

Senex next asserts that the only action it takes that directly concerns the plaintiffs is its "ministerial act" of mailing its landlord clients' electronically signed Notices. Def.'s Mem. Supp. Mot. Dismiss 8, ECF No. 7. "It is well settled that companies that perform ministerial duties such as stuffing and printing the debt collector's letters are not debt collectors for purposes of the FDCPA." Crawford, 259 F. Supp. 3d at 469 (cleaned up). To this end, the Crawford court identified six factors "material to the determination of whether a sender engages in merely ministerial functions, rendering it not subject to the FDCPA, or whether the sender is actively collecting debt for another." Id. at 470. They include:

> (1) whether the sender instructs the debtor to contact the sender or the creditor about the debt; (2) whether the sender was substantially involved in the drafting of the letter; (3) whether the sender provides follow-up debt collection services; (4) the extent to which the sender can settle the matter; (5) the compensation structure for the sender; and (6) the extent to which the sender keeps its own records regarding the debtors.

Id.

In Crawford, the court applied the six factors and concluded that two weighed in favor of Senex: (1) the letters instructed tenants to contact the landlords about the outstanding debt, and (2) the plaintiffs did not allege that Senex had any authority to settle the dispute at the initial stage. Id. at 471. The court ultimately found, however, that more factors weighed in favor of the plaintiffs' contention that Senex acted as a debt collector. First, the plaintiffs "alleged that Senex drafts, sends and administers the [n]otices," an allegation "bolstered by the fact that each [n]otice contains virtually identical text, despite the [n]otices allegedly coming from different landlords." Id. Second, the

10

court inferred from the complaint "that the landlords merely passively provide Senex with the debtor's contact information, and Senex then institutes the collection efforts, which includes everything from sending the initial communications to filing the unlawful detainer actions." Id. Third, the notices' text indicated "that Senex charges attorney's fees for sending the letter, and is not paid per letter sent." Id. Finally, Senex conceded that it commenced unlawful detainer actions on behalf of the landlords. Id. Against this backdrop, the court concluded that under Rule 12(b)(6) the plaintiffs alleged sufficient facts showing that Senex's actions went beyond mere ministerial work, rendering it subject to the FDCPA as a debt collector. Id. at 473.

Here, the court again finds that more factors suggest Senex acts as a debt collector when it transmits the Notices. As in Crawford, the Notices instruct the tenants to contact the landlord concerning the unpaid rent, and the complaint does not allege that Senex has the authority to settle dispute on behalf of the landlord. However, the complaint alleges—and the Notices themselves state—that Senex drafts the Notices, meaning that Senex was certainly "substantially involved in the drafting of the [Notices.]" Id. at 470; Compl. ¶ 17; Def.'s Reply Br. Ex. A–C. Moreover, the complaint does not allege that Senex is paid per letter sent, and the Notices state that Senex earns attorney's fees for preparing the notices and for "providing legal advice due to [the tenant's] noncompliance." Compl. ¶ 17; Def.'s Reply Br. Ex. A–C. Finally, the complaint alleges that Senex saves the debtor-tenants' information in its records so it can later institute unlawful detainer actions against them. Compl. ¶ 14. Four of the six factors therefore suggest that in sending the Notices, Senex completes more than just ministerial work and instead acts as a debt collector. The complaint therefore sufficiently alleges that Senex acts as a debt collector and is therefore subject to the FDCPA.

Mem. Op., ECF No. 31, at 8-13. The court finds no reason to deviate from its prior ruling, and Senex has not shown that the applicability of the UETA as to Senex's status as a debt collector is a purely legal question rather than a fact-intensive one. The court's earlier ruling in this case does not make a determination one way or the other as to Senex's status as a debt collector. Rather, the court simply determined that pursuant to the Crawford factors, plaintiffs

pleaded sufficient facts to show that Senex may be a debt collector at the motion to dismiss stage. It is inherent to the court's decision that a final determination as to Senex's status as a debt collector and the applicability, or lack thereof, of the UETA will be made at a later phase of litigation after discovery has ensued and the record has been more developed. Because such a fact-ladened question is the antithesis of a controlling question of law, Senex has failed to prove this element of an interlocutory appeal.

### 2.    Substantial Ground for Difference of Opinion

A substantial ground for difference of opinion arises only if the disagreement on controlling law exists between courts rather than parties. United States ex rel. A1 Procurement, LLC v. Thermocor, Inc., 173 F. Supp. 3d 320, 323 (E.D. Va. 2016). Additionally, a simple disagreement between courts will not merit certification; rather, a substantial ground for disagreement may arise when there is a novel and difficult issue of first impression, or if there is a circuit split and the controlling circuit has not commented on the conflicting issue. Id. (internal citations omitted). Nevertheless, the mere fact that an issue is one of first impression or that there is a lack of unanimity is insufficient to meet the test. Wyeth v. Sandoz, Inc., 703 F. Supp. 2d 508, 527 (E.D.N.C. 2010). The district judge must analyze the strength of the arguments in opposition to the challenged ruling when determining whether there is a substantial ground for dispute. In re Flor, 79 F.3d 281, 284 (2d Cir. 1996). In order to find a substantial ground for a difference of opinion, there must be a genuine doubt as to "'whether the district court applied the correct legal standard in its order.'" Wyeth, 703 F. Supp. 2d at 527 (quoting Consub Del. LLC v. Schahin Engenharia Limitada, 476 F. Supp. 2d 305, 309

(S.D.N.Y. 2007), aff'd, 543 F.3d 104 (2d Cir. 2008), abrogated in part on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009)).

Here, Senex argues that the complex interplay of the FDCPA and UETA present novel questions of law that the Fourth Circuit should answer. ECF No. 38 at 14. Senex asserts several arguments to support this assertion, but each is unavailing.

First, Senex contends that Henson v. Santander Consumer USA, Inc., 817 F.3d 131, 134 (4th Cir. 2016), aff'd, 137 S. Ct. 1718 (2017), stands for the principle that "an entity collecting a debt for its own account is not a debt collector under the FDCPA." ECF No. 38 at 12. Although the Henson court does hold that "a debt collector collects debt on behalf of a creditor; a creditor, on the other hand, is a person to whom the debt is owed, and when a creditor collects its debt for its own account, it is not generally acting as a debt collector[,]" Henson, 817 F.3d at 135-36, Senex understands this ruling too broadly. To be sure, the Henson court merely articulates the general rule that an entity collecting its own debt is usually not considered a debt collector. However, courts have held that law firms collecting their own debt may be subject to the FDCPA. See Foster v. D.B.S. Collection Agency, 463 F. Supp. 2d 783, 802 (S.D. Oh. 2006) (holding that a debt collector's request for attorney's fees in state court against a debtor violated a provision of the FDCPA because the fees were unrecoverable under Ohio law); McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 949-50 (9th Cir. 2011) (affirming district court ruling that a debt collector violated the FDCPA when they sought attorney's fees that they were not entitled to seek); Fetters v. Paragon Way, Inc., No. 1:10-cv-904, 2010 WL 5174989, at *3-4 (M.D. Pa. Dec. 15, 2010) (noting that "when a debt collector asserts that there is an obligation to be paid, whether true or not, the

protections of the FDCPA are triggered."). To be sure, the court's prior rulings in Crawford and this case do not cut against the Henson decision. Simply, Crawford recognizes the general rule set forth in Henson and echoes the sentiments of other courts that have held based on the circumstances an entity collecting its own debt may be a debt collector under the FDCPA. Crawford and the previous ruling in this case support the notion that determining the entity's debt collector status is a fact-intensive inquiry.

Next, Senex argues that the court is misguided to focus on the text of the Notices as opposed to the author of the Notices. ECF No. 38 at 12-13. Rather than relying on the plain language of the UETA, Senex avers that the court relies on out of circuit precedent, Dowling v. Kucker Kraus & Bruh, LLP, No. 99-CIV-11958-RCC, 2005 WL 1337442 (S.D.N.Y. June 6, 2005), and Khaytin v. Stern & Stern, Esqs., No. 1:12-cv-04169, 2013 U.S. Dist. LEXIS 144091 (E.D.N.Y. Sept. 30, 2013), and the Crawford factors, of which have not been followed in any other case, to support the court's finding that a debt collector's communications on a creditor's letterhead may still be within the purview of the FDCPA. ECF No. 38 at 13-14. To be sure, Senex points to no case law to support its assertion. In fact, Senex concedes this fact; rather, Senex argues that "a 'novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent.'" Id. at 14 (quoting Dartell v. Tibet Pharm., Inc., Civ. Action No. 14-3620, 2018 WL 994896, at *2 (D.N.J. Feb. 21, 2018)). However, Senex fails to meet the exacting standard required to show this is a novel question of law in order to support an interlocutory appeal.

Lastly, Senex states that plaintiffs' arguments as to the legitimacy and legal effect of the landlords' e-signatures do not require factual development. Senex contends that, on appeal,

the Fourth Circuit may simply look to the four corners of the Notices and apply the UETA. ECF No. 38 at 14-15. Again, Senex's argument presupposes that the UETA applicability is a purely legal question, but it has not proven as much. Plaintiffs' claims involve fraud, and absent Senex's showing that the threshold question of the UETA's applicability is a purely legal question, the Notices' authenticity and legal effect should be developed through discovery. As such, Senex fails to meet the second element.

### 3.     Material Advancement of the Litigation

To determine whether an interlocutory appeal materially advances litigation, district courts consider "whether an immediate appeal would: (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." Lynn, 953 F. Supp. 2d at 626. Moreover, "the mere fact that [a case's] resolution at this time may save pre-trial and trial effort and expense is not determinative[,]" because "that of course can be said of any interlocutory appeal." Fannin, 1989 WL 42583, at *5.

Here none of the factors support material advancement. First, resolution of an interlocutory appeal would not be completely dispositive of the litigation. If the Fourth Circuit were to reverse this court's ruling and find that the UETA applies, then that determination would lead to dismissal of the case. However, if the Fourth Circuit were to affirm, then this case would be in the same position as it is now, and the case would proceed to trial. Second, mere uncertainty as to whether the UETA applies to Senex and whether the firm is a debt collector does not necessitate a complex issue that makes the case more difficult to settle or more likely to be tried. Indeed, with discovery, the answers to said inquiries would become

much more apparent. Third, litigating the interlocutory appeal would be similar in cost to proceeding with discovery. Considering all the circumstances, the court finds that Senex has not met its burden of showing that granting interlocutory appeal would materially advance litigation.

## IV. Conclusion

The court is mindful of the Fourth Circuit's admonition in <u>Fannin</u> that interlocutory review is an extraordinary remedy that is not to be granted lightly. <u>Fannin</u>, 1989 WL 42583, at *2. Furthermore, the court is heedful that it must "protect the integrity of the congressional policy against piecemeal appeals." <u>Switzerland Cheese Ass'n v. Horne's Market, Inc.</u>, 385 U.S. 23, 25 (1966)). As such, having weighed all the factors, the court concludes that interlocutory appeal is an inappropriate remedy in this case, and the court **DENIES** Senex's motion. Because the court denies interlocutory appeal, Senex's motion to stay proceedings pending appeal is **DENIED as moot**.

An appropriate order will be entered.

Entered: January 7, 2022

Michael F. Urbanski
Chief U.S. District Judge
2022.01.07 09:24:41
-05'00'

Michael F. Urbanski

Chief United States District Judge