UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JENNIFER LORD, <u>et al.</u>, ) | |
|     Plaintiffs, ) | |
| ) | Case No. 7:20-cv-00541 |
| v. ) | |
| ) | By:   Michael F. Urbanski |
| SENEX LAW, P.C. ) | Chief United States District Judge |
|     Defendant. ) | |

## MEMORANDUM OPINION

This matter is before the court on plaintiffs Jennifer Lord, Toniraye Moss, and Ebony Reddicks' motion for partial summary judgment, ECF No. 91, and defendant Senex Law, P.C.'s ("Senex") motion for summary judgment, ECF No. 95.

At issue in this lawsuit is whether Senex acts as a debt collector for the purposes of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692(a)(6), in drafting and sending Notices of Noncompliance ("Notices") to delinquent tenants for its landlord clients. Plaintiffs contend that Senex acts as a debt collector subject to the FDCPA because it regularly engages in debt collection activities by drafting and sending the Notices to delinquent tenants. Senex argues that because the Notices are reviewed, approved, and signed by its landlord clients, the Notices are those of the landlord-creditor, and Senex is not subject to the FDCPA for its legal work in drafting the Notices and the ministerial task of sending the Notices to the tenants.

Since the enactment of the FDCPA decades ago, federal courts have been faced with addressing its applicability to a wide variety of debt collection schemes. While these cases are very fact intensive, the court concludes from these decisions that Senex acts as a debt collector when it drafts and sends delinquency Notices to the tenants of its landlord clients.

1

Accordingly, the court **GRANTS** plaintiff's motion for partial summary judgment, and **DENIES** defendant's motion for summary judgment.[1]

## I.

### A. Senex Law, P.C.

Senex is a Virginia-based law firm that provides services to landlord clients, including services associated with tenant rent delinquency. The Senex business model operates as follows: Senex obtains delinquent rent information from its landlord clients in delinquency reports, ledgers, or relevant delinquency related documents by email, facsimile, or through the Senex online portal, in order to prepare the Notices of Noncompliance. ECF No. 92, at 3; ECF No. 96, at 6. Delinquency reports contain information regarding tenants that are delinquent in their payments and require a notice that their debt is past due. ECF No. 96, at 6. Senex usually receives these reports on what is internally called "notice day," which is usually between the sixth and eighth day of the month. ECF No. 92-1, at 21–22. For each account, Senex applies the tenant's name, address, charges due, landlord's name, and contact information to a Notice template. ECF No. 92, at 9; ECF No. 96, at 7. Once the Notices are filled out, Senex sends unsigned copies of the Notices to the landlords for their review. ECF No. 96, at 7. Upon review, the landlord can either decline, approve, or request a revision for each Notice. Id. If a Notice is approved, the landlord electronically signs it and returns it to Senex for "attorney review." Id.; ECF No. 92, at 8–9. Senex then sets up a "central inbox area in the conference room," and "attorneys will come to receive the notices that need review and

---

[1] In granting plaintiffs' motion for partial summary judgment and denying Senex's motion for summary judgment, the court addresses only the issue whether Senex is a debt collector subject to the FDCPA. As the record is not fully developed as to whether the Notices in question violated the FDCPA, the court does not reach the question of liability at this point.

2

do that throughout the day." ECF No. 92-7, at 12. Senex attorneys "all work together" to do the final review before mailing the Notices to the tenants. Id. at 12–17. The final review involves verifying that the Notice includes the correct tenant and fee information and that the Notice complies with state law. ECF No. 96, at 8. Whether a Notice gets a final attorney review depends on whether the landlord client has paid Senex for this review, and if they have, that $30 fee is passed onto the tenant as part of their failure to pay rent as "attorneys' fees." Id. at 9; ECF No. 92-3. The date on the Notice reflects the date on which final attorney review occurred. ECF No. 96, at 9. Senex mails out the Notices on the landlord's letterhead. ECF No. 92, at 11. While the Notices state that the landlord has retained Senex which "drafted this notice and provided legal advice due to your noncompliance," the contact information on the Notices is that of the landlord, and the Notices direct that payments be sent to the landlord.

The number of notices issued on a given day varies substantially. On January 8, 2020, for example, Senex sent 251 Notices. ECF No. 92, at 5 & ex. 12. On February 6, 2020, Senex sent 3,123 Notices. Id. at 6. The next month, Senex sent 2,289 Notices on one day, and 120 Notices a few days later. Id. at 7.

### B. Plaintiffs

The complaint raises both class action allegations[2] and individual claims on behalf of plaintiffs Jennifer Lord, Ebony Reddicks, and Toniraye Moss.

---

[2] As a general rule, in potential class action suits, courts will not consider a plaintiff's motion for summary judgment prior to class certification "in order to avoid the problem of one way intervention—whereby a potential class member could await the outcome of a determination on the merits before deciding whether to join the class." Hartley v. Suburban Radiologic Consultants, Ltd., 295 F.R.D. 357, 368 (D. Minn. 2013) (internal citation omitted). This decision is ultimately at the court's discretion. Telfair v. First Union Mortg. Corp., 216 F.3d 1333, 1343 (11th Cir. 2000). However, there are two circumstances in this case that make ruling on plaintiff's summary judgment motion appropriate. First, a party may implicitly waive the one-way intervention rule by failing to object to the court reviewing a summary judgment motion prior to class certification. Hyman v. First Credit Union Corp., 982 F. Supp. 8, 11 (D.D.C. 1994) ("[D]efendants have implicitly waived this right . . . [by] cooperat[ing] with this court[] without raising any objections or concerns."). Not only has Senex

Plaintiff Jennifer Lord had a lease agreement with Frontier Apartments from June 22, 2019, through June 21, 2020. Her agreement required her to pay $700 by the 5th of each month to avoid late fees. Her lease allowed for "reasonable attorney's fees and cost of service of process" "upon termination of [her] tenancy." When Lord accrued overdue rent for her apartment, Senex drafted and sent a Notice on January 8, 2020, seeking to collect $152.44 in overdue rent, $100 in late fees, and $30 in attorney's fees. The following month, Senex sent another Notice on February 6, 2020, seeking to collect $528.75 in overdue rent, $100 in late fees, and $30 in attorney's fees. Senex sent another Notice on March 9, 2020, seeking $754.51 in overdue rent, $100 in late fees, and $30 in attorney's fees. ECF No. 92, at 3–6.

Plaintiff Ebony Reddicks had a lease agreement with Frontier Apartments from December 6, 2019, through December 5, 2020. Her agreement required her to pay $765 by the 5th of each month to avoid late fees. Her lease contained the same language regarding attorney's fees upon termination of tenancy as Lord's lease, and it also contained a provision that a $30 fee would be charged if "the attorneys issue a notice for late rent." On January 8, 2020, Senex sent her a Notice seeking $524.99 in overdue rent, $100 in late fees, and $30 in attorney's fees. Senex sent another Notice on February 6, 2020, seeking $747.39 in overdue rent, $100 in late fees, and $30 in attorney's fees. On March 9, 2020, Senex sent a third Notice

---

failed to object to plaintiff's motion for summary judgment, it filed responses and its own motion for summary judgment. Senex has thus implicitly waived any objection to deciding the motion for partial summary judgment before class certification. See Mendez v. The Radec Corp., 260 F.R.D. 38, 44–45 (W.D.N.Y. 2009) ("[T]he defendant mov[ing] for summary judgment prior to class certification" impliedly waives any objection to pre-certification summary judgment review (emphasis in original)). Second, plaintiffs' motion is only seeking summary judgment on the threshold question of whether the FDCPA applies to Senex, which is not case-dispositive. See In re Zetia (Ezetimibe) Antitrust Litigation, 2:18-md-2836, 2021 WL 9870367, at *7–8 (E.D. Va. May 7, 2021) (addressing plaintiff's motion for summary judgment before class certification on non-dispositive question but declining to address case-dispositive issues).

4

seeking $421.90 in overdue rent, $100 in late fees, and $30 in attorney's fees. ECF No. 96, at 3–10.

Plaintiff Toniraye Moss had a lease agreement with Freedman Point Apartments from December 31, 2019, through December 20, 2020. She was required to pay $952 by the 5th of each month to avoid late fees. Her lease only allowed for attorney's fees "in the event of an eviction suit." Senex sent her a Notice on February 6, 2020, seeking to collect $1,428 in overdue rent, $50 in late fees, and $30 in attorney's fees. Senex sent her another notice on March 6, 2020, seeking $1,166 in overdue rent, $50 in late fees, and $30 in attorney's fees. Senex also sent her a notice four days later, on March 10, seeking $952 in overdue rent, $28 in late fees, and $30 in attorney's fees. ECF No. 96, at 3–10.

### C. Procedural History

Plaintiffs brought suit on September 9, 2020. ECF No. 1. On October 28, 2020, Senex moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that plaintiffs' claims fail as a matter of law because Senex is not a debt collector subject to the FDCPA. ECF No. 6. The court granted in part and denied in part Senex's motion to dismiss. ECF No. 32. In relevant part, the court rejected the argument that Senex, as a matter of law, was not a debt collector and thus was not subject to the FDCPA. Id. at 8–13. Senex then brought a motion to permit an interlocutory appeal and stay, alleging that "the application of the Virginia Uniform Electronic Acts (UETA) precludes Senex from liability for the claims asserted against it." ECF No. 48. The court denied Senex's motion. ECF No. 53. Following discovery, plaintiffs moved for partial summary judgment, ECF No. 91, and Senex moved for summary judgment, ECF No. 95. The court heard argument on the

motions on December 2, 2022. The issue common to both of these motions is whether defendant qualifies as a "debt collector" pursuant to 15 U.S.C. § 1692a(6).

## II.

Pursuant to Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'"

McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Anderson, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

### III.

"The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." Crawford v. Senex Law, P.C., 259 F. Supp. 3d 464, 468 (W.D. Va. 2017) (quoting Yarney v. Ocwen Loan Serv., LLC, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013)). Moreover, "[t]he FDCPA is a strict liability statute that prohibits false or deceptive representations in collecting a debt, as well as certain abusive debt collection practices." McLean v. Ray, 488 F. App'x 577,

7

682 (4th Cir. 2012). Attorneys seeking the repayment of a debt on behalf of a client are debt collectors within the ambit of the FDCPA. Heintz v. Jenkins, 514 U.S. 291, 292 (1995). A plaintiff must demonstrate the following to establish a violation of the FDCPA: (1) that the plaintiff is a "consumer" as defined by the FDCPA; (2) that the defendant is a "debt collector" as defined by the FDCPA; and (3) that the defendant engaged in any act or omission in violation of the FDCPA. Crawford, 259 F. Supp. 3d at 468. The question before the court is whether Senex is a "debt collector" for the purposes of the FDCPA.

## A.

Under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

The FDCPA does not regulate creditors "when they collect debt on their own account." Henson v. Santander Consumer USA, Inc., 817 F.3d 131, 134 (4th Cir. 2016). As such, Senex first argues that the FDCPA does not apply to it because the Notices were reviewed, approved, and electronically signed by their landlord-creditor clients. Because the Notices appear to come from the landlord, are signed by the landlord, and direct payment and communications to the landlord, Senex argues that its role in drafting and sending the Notices falls below the FDCPA's radar.

A number of courts in the Second Circuit have addressed this question, and in so doing have focused on who prepared the challenged notice, rather than who signed or mailed it. For example, in Romea v. Heiberger & Assocs., 163 F.3d 111, 117 (2nd Cir. 1998), the Second

8

Circuit held that the process server exemption to the FDCPA did not apply "to those who prepared the communication that was served on the consumer."

In <u>Dowling v. Kucker Kraus & Bruh, LLP</u>, No. 99CIV11958RCC, 2005 WL 1337442 (S.D.N.Y. June 6, 2005), the court noted that "the Second Circuit made it clear in <u>Romea</u> that liability under the FDCPA is focused on those who actually prepare the document." <u>Id.</u> at n.1. The <u>Dowling</u> court squarely rejected the argument made by Senex here, concluding "that debt collectors cannot evade the requirements of the FDCPA merely by having a creditor sign a violative communication. Because Defendants prepared and sent the rent-demand letter to Plaintiffs, they were required to comply with FDCPA provisions concerning initial communications." <u>Id.</u> at n.2. The <u>Dowling</u> court granted plaintiff's motion for partial summary judgment on the issue of liability when the law firm drafted, prepared, and printed a rent-demand notice that appeared to come from the landlord-creditor. The letter was signed by the landlord, but bore the law firm's file number on the bottom. It had no marking indicating that any third party was involved. Upon nonpayment and consent of the landlord-creditor, the law firm would commence civil eviction proceedings after sending the letter.

Other district courts in the Second Circuit have concluded similarly. See <u>Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.</u>, No. 99 CIV 3227(JGK), 2000 WL 1448635, *6 (S.D.N.Y. Sept. 28, 2000) ("The plaintiffs make specific allegations in their amended complaint that the defendants regularly prepared and sent three-day notices on behalf of Felds Realty, that the notices were printed on the defendants' paper, and that the notices bore abbreviations used internally by the defendants. The plaintiffs have alleged facts which could, if proven true, show that the defendants were 'debt collectors' as defined by the FDCPA.");

9

Khaytin v. Stern & Sterns, Esqs., No. 12-CV-4169 (SLT)(MDG), 2013 WL 5520000, *5–6 (E.D.N.Y. Sept. 30, 2013) (denying motion to dismiss FDCPA claim against law firm which drafted and sent delinquent rent payment notices signed by landlord-creditor); Razilova v. Horing Welikson & Rosen, P.C., No. 18CV2610 (RJD)(CLP), 2019 WL 1333247, *6 (E.D.N.Y. March 25, 2019) ("[A]lthough the 3 Day Letter was signed by the landlord, courts in this Circuit focus on who sent the letter, not who signed it.").

The court agrees with the cases decided in the Second Circuit that the electronic signature of the landlord does not immunize Senex from FDCPA liability.[3] The court finds this Second Circuit precedent persuasive, and believes that Senex's undisputed conduct in drafting, processing, and sending the delinquent rent Notices is debt collection activity subjecting it to the requirements of the FDCPA.

The court is not persuaded by Senex's argument that a contrary conclusion is compelled

---

[3] Two cases cited by Senex at oral argument, Hairston v. Whitehorn & Delman, No. 97 Civ. 3015(JSM), 1998 WL 35112 (S.D.N.Y. Jan. 30, 1998), and Amin v. Del Plate Investment Group, LLC, et al, No. 20-cv-80697, 2020 WL 3256862 (S.D. Fla. June 15, 2020), are not to the contrary. In Hairston, the Southern District of New York concluded that a law firm was subject to the FDCPA for sending letters to delinquent tenants. The letters identified both the landlord and the law firm and were signed by a member of the law firm. The law firm sought dismissal of the FDCPA allegations, asserting that sending the letters was not a debt collection activity, but rather a procedural notice required under New York law to start eviction proceedings. Concluding that the letters "could well perform both functions simultaneously," id. at *2, the court denied the law firm's motion to dismiss the FDCPA claim against it. Senex relies on the following dictum from Hairston to support its argument that the FDCPA does not apply to it:

> The Court notes that the conflict [between the FDCPA and New York's eviction notice requirements] can be avoided if the landlord herself signs and sends the letters to the tenants, as permitted under [New York law]. The FDCPA would not apply to such a landlord, because she would not be collecting the debt of another but rather her own debt.

Id. at *3. The Amin court followed Hairston, noting the application of the FDCPA to a dunning letter sent by a law firm for overdue rent, and quoting from Hairston that "the conflict can be avoided if the landlord herself signs and sends these letters to the tenants." Amin, 2020 WL 3256862 at *3. Senex's argument misses the point of Hairston and Amin. Neither case stands for the proposition that the signature of a landlord-creditor on a rent delinquency notice prepared and sent by a law firm absolves the law firm of potential FDCPA liability. Rather, each case suggests that the law firm would not be subject to the FDCPA if the landlord "**signs and sends** the letters to the tenants." (emphasis added). Here, of course, while the landlord electronically signs the Notices, Senex prepares, processes and sends them. Because Senex takes steps to collect its landlord clients' debts beyond the level noted by the courts in Hairston and Amin, these cases are not dispositive.

10

by the Uniform Electronic Transactions Act (UETA), which requires that electronic signatures be given legal effect. The UETA states that "if a law requires a signature . . . an electronic signature satisfies the law," Va. Code § 59.1-485(d), and therefore, according to Senex, this ends the only necessary analysis. Senex argues that because the landlord signs the Notice seeking to collect the debt, the Notice is that of the landlord, and Senex cannot be a debt collector. ECF No. 96, at 12–17.

The court rejected this same argument both in Crawford and in the motion to dismiss opinion in this case, as follows:

> In Crawford, a court in this district addressed a nearly identical argument that Senex raised on a Rule 12(b)(6) motion to dismiss. In that matter, Senex similarly argued that the noncompliance notices it sent out were "from the landlords—not Senex" because "under Virginia law, an electronic signature is valid." [citing Crawford, 259 F. Supp. 3d at 472]. The court instead concluded, however, that "the more relevant question is whether Senex drafts, prepares, prints, and has the Notices served." Id. Because the complaint contained these factual allegations, the court concluded that the plaintiffs adequately pleaded that Senex acted as a debt collector when it prepared and transmitted the noncompliance notices. On Senex's subsequent motion for judgment on the pleadings, the court again rejected Senex's argument "that the landlord's electronic signature establishes, as a matter of law, that the Notices are the act of the landlord . . . ." Crawford v. Senex Law, P.C., No. 3:16-cv-73, 2017 WL 5162821, at *5 (W.D. Va. Nov. 7, 2017) ["Crawford II"]. Instead, the court reiterated its opinion "that the more relevant inquiry is whether Senex drafts, prepares, prints, and has the Notices served." Id. (internal quotation marks and citation omitted.).

Mem. Op., ECF No. 31, at 9–10. Thus, while the UETA gives legal effect to the landlord's electronic signature, that statute does not excuse Senex from complying with the requirements of the FDCPA for its other debt collection activities separate and apart from the signature. The record establishes that Senex operates a debt collection processing system for its landlord

11

clients by drafting, preparing, and sending rent delinquency Notices and engaging in subsequent collection activities, such as filing unlawful detainer actions. Following Second Circuit precedent, Senex acts as a debt collector regardless of the fact that the Notices are electronically signed by the landlord.

Senex also argues that summary judgment should be entered for it because plaintiffs originally alleged that Senex, rather than its landlord clients, signed the Notices. Following discovery, there is no dispute that Senex's clients, the landlords, actually electronically sign each Notice. Again, Senex's argument places too much emphasis on the signature on the Notices and ignores Senex's crucial role in orchestrating and implementing the issuance of the Notices. In essence, Senex's argument elevates form, reflected in the landlord's signature, over the substance of Senex's integral role in the debt collection system it operates. As such, the court disagrees with Senex that the fact that the landlords actually electronically sign each Notice allows Senex to disregard its obligations as a debt collector under the FDCPA.

## B.

Putting the signature issue aside, the court must next assess whether Senex is a debt collector under the prevailing legal standard. The statutory definition of debt collector "establishes two alternative tests for considering whether a defendant is a debt collector: (1) the principal purpose test and (2) the regularly collects test." Crawford, 259 F. Supp. 3d at 469. "Thus, the overall structure of § 1692a(6) makes clear that when assessing whether a person qualifies as a 'debt collector,' [the court] must first determine whether the person satisfies one of the statutory definitions given in the main text of § 1692a(6)." Henson, 817 F.3d at 136. The "regularly collects" test is most appropriate for this set of facts.

12

The FDCPA applies to lawyers "who regularly engage in consumer-debt-collection activity, even when that activity consists of litigation." Heintz, 514 U.S. at 299. In an early version of the statute, the FDCPA contained an exemption for lawyers. Pub. L. 95-109, § 803(6)(F). That exemption was fully repealed in 1986, Pub. L. 99-361, 100 Stat. 768, which the Supreme Court understood to mean that "Congress intended that lawyers be subject to the Act whenever they meet the general 'debt collector' definition," Heintz, 514 U.S. at 294. A law firm is a debt collector if it regularly engages in debt collection, if it "works for a company to whom it believes the plaintiff owes a debt, and that the law firm had 'specific information' about the plaintiff's debt." Battle v. Gladstone Law Grp., 951 F. Supp. 2d 1310, 1313 (S.D. Fla. 2013) (quoting Mellentine v. Ameriquest Mortg. Co., 515 F. App'x 419, 424 (6th Cir. 2013)). Whether a law firm "regularly engage[s]" in debt collection activity is determined on a "case-by-case basis," Crawford, 259 F. Supp. 3d at 295 (quoting Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F. 3d 56, 62 (2d Cir. 2004)), and the factors used to make this determination are:

> (1) The absolute number of debt collection communications issued, and/or collection-related relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernible, (3) whether the entity has personnel specifically assigned to work on debt collection activity; (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations . . . . Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as part of the practice.

Id. (citing Goldstein, 374 F.3d at 62; James v. Wadas, 724 F.3d 1312, 1317–18 (10th Cir. 2013)

(adopting the Goldstein factors); Hester v. Graham, Bright & Smith, P.C., 289 F. App'x 35, 41 (5th Cir. 2008) (same)).

Considering these factors, it is clear that Senex regularly engages in debt collection activity. First, there is a pattern of sending out the Notices within five to nine days of rent being due. This indicates a "frequency of such communications . . . including [a] pattern of such activity." Crawford, 259 F. Supp. 3d at 472 (quoting Goldstein, 374 F.3d at 62). Second, this pattern of activity—together with Senex's substantial involvement in drafting the notices and the sheer number of notices issued—indicates that the "activity is undertaken in connection with ongoing client relationships with entities that have retained [Senex] to assist in the collection of outstanding consumer debt obligations." Id.; see Goldstein, 374 F.3d at 63 ("The large number of notices, taken together with the repetitive pattern of issuance of multiple notices each month, clearly could support a determination that [the law firm]'s debt collection practices were regular."); ECF No. 96-12 (reflecting thousands of notices issued between March 6 and March 9, 2020). Third, Senex has systems in place to "facilitate [debt collection] activity." As Senex explains, each landlord has a login credential to an account in the Senex data base which allows them to "review, approve, and sign." ECF No. 96, at 7. This system is equipped with data entry and email notification capabilities. Id.; see Goldstein, 374 F.3d at 63–64 ("[Defendant] had a system in place for preparing and issuing the notices: it relayed tenant arrears information to an outside computer service which generated the notices, assigned a paralegal to review them . . . and sent the notices . . . for delivery to the tenant."). Plainly, Senex regularly engages in debt collection activity and meets the statutory test as a debt collector.

## C.

Finally, Senex argues that its actions are ministerial only, invoking the line of cases holding that entities performing only labeling, stuffing, printing, or mailing services are not debt collectors under the FDCPA. It "is well-settled that 'companies that perform ministerial duties . . . such as stuffing and printing the debt collector's letters' are not debt collectors for purposes of the FDCPA." White v. Goodman, 200 F.3d 1016, 1019 (7th Cir. 2000). Senex's argument ignores the fundamental operation of the Senex delinquent rent collection system. Instead of merely serving as a mailing service, Senex provides a turn-key delinquent rent processing system for its landlord clients. Upon receipt of the delinquent rent data, Senex prepares the Notices on a template it drafted. It then sends the draft Notices to the landlords for review and electronic signature, and performs a final check before mailing the Notices. Importantly, Senex retains the delinquent tenant's information for follow-up collection and eviction proceedings. In no sense can the integrated Senex delinquent rent collection system be deemed ministerial.

In Crawford, 259 F. Supp. 3d at 469, the court surveyed case law on this issue and provided a thorough discussion of the considerations for determining whether a sender is "engag[ing] in merely ministerial functions" or "whether the sender is actively collecting debt for another." See id. at 469–70 (citing White v. Goodman, 200 F.3d at 1019; Powell v. Comput. Cred., Inc., 975 F. Supp. 1034 (S.D. Ohio 1997); Fratto v. Citibank, Jablon, & Capitol Cred. Agency, No. 94C1817, 1996 WL 554549 (N.D. Ill. Sept. 25, 1996); Laubach v. Arrow Servs. Bureau, 987 F. Supp. 625 (N.D. Ill. 1997); Trull v. Lason Sys., Inc., 982 F. Supp. 600 (N.D. Ill. 1997), Aquino v. Cred. Control Servs., 4 F. Supp. 2d 927, 929 (N.D. Cal. 1998); Randle v. GC

Servs., L.P., 48 F. Supp. 2d 835 (N.D. Ill. 1999)). From these cases, the court identified six factors "material to the determination" of this question. Id. The factors include:

> (1) whether the sender instructs the debtor to contact the sender or the creditor about the debt; (2) whether the sender was substantially involved in the drafting of the letter; (3) whether the sender provides follow-up debt collection services; (4) the extent to which the sender can settle the matter; (5) the compensation structure for the sender; and (6) the extent to which the sender keeps its own records regarding the debtors.

Id.

Applying all these factors to the facts of Crawford, the court determined that two factors weighed in favor of Senex: 1) the letters instructed tenants to contact the landlords about the outstanding debt, and 2) the plaintiffs did not allege that Senex had any authority to settle the dispute at the initial state. Id. at 471. But more factors weighed in favor of the plaintiff's assertion that Senex was acting as a debt collector. First, Senex "drafts, sends, and administers the Notices," bolstered by "the fact that each Notice contains virtually identical text, despite the Notices coming from different landlords." Id. Second, the court noted "that the landlords merely passively provide Senex with the debtor's contact information, and Senex institutes the collection efforts, which includes everything from sending the initial communications to filing the unlawful detainer actions." Id. Third, the Notice text indicated that "Senex charges attorney's fees for sending the letter, and it is not paid per letter sent." Id. Finally, Senex commenced unlawful detainer actions on behalf of their landlord clients. Id.

At the motion to dismiss stage of this case, accepting the allegations in the complaint as true, this court reached the same conclusion, as follows:

> [T]he court again finds that more factors suggest Senex acts as a debt collector when it transmits the Notices. As in Crawford, the

> Notices instruct the tenants to contact the landlord concerning the unpaid rent, and the complaint does not allege that Senex has the authority to settle dispute on behalf of the landlord. However, the complaint alleges—and the Notices themselves state—that Senex drafts the Notices, meaning that Senex was certainly "substantially involved in the drafting of the [Notices.]" Moreover, the complaint does not allege that Senex is paid per letter sent, and the Notices state that Senex earns attorney's fees for preparing the notices and for "providing legal advice due to [the tenant's] noncompliance." Finally, the complaint alleges that Senex saves the debtor-tenants' information in its records so it can later institute unlawful detainer actions against them. Four of the six factors therefore suggest that in sending the Notices, Senex completes more than just ministerial work and instead acts as a debt collector.

Mem. Op., ECF No. 31, at 12–13. Now that the parties have completed discovery, the question is whether these factors apply differently to the facts of this case. The court finds that they do not.

To begin, the court agrees with both parties that the first and fourth factors for assessing whether Senex is engaging in purely ministerial tasks favor Senex. See Pl's Opp. Def. Mot. Summ. J., ECF No. 106, at 17 ("Plaintiffs agree with Senex that the first and fourth factor point toward Senex."). The Notices clearly indicate that the tenant should contact and pay the landlord upon receipt, and the record does not contain evidence that shows defendant could settle the claims at issue.

However, other factors strongly weigh against the conclusion that Senex performs merely ministerial functions. First, one cannot consider the delinquent rent collection services provided by Senex in a piecemeal fashion. Rather, Senex provides an integrated delinquent rent collection system for its landlord clients. It prepares the Notices, sends them to the landlord for approval, reviews and mails them to the delinquent tenants. The Notices

17

themselves state that Senex prepares the Notices. Each of the Notices state that the landlord "ha[s] now retained Senex Law, PC and they have already drafted this notice." ECF No. 92 ex. 6, at 1–9. Senex is undeniably "substantially involved" in the preparation.

Next, there is no dispute that defendant retains each tenant's information after issuing a Notice and provides follow-up debt collection services. See Def. Mot. Summ. J., ECF No. 96, at 24 ("Senex does engage in subsequent debt collection activity" including that it "may be retained to file an unlawful detainer based on the notice" and "keeps records regarding the debtors"). Senex argues that while they concede these facts, the court should not consider them determinative. Asserting that it "would defy commonsense and contradict public policy to deter clients from retaining lawyers for compliance advice about letters or legal notices for fear of triggering the FDCPA," Senex urges the court to find these facts unimportant. Id. at 24–25. This argument misses the mark. First, the debt collector designation is not due simply to the fact that Senex keeps records—it is due to why those records are kept. As Senex concedes, the records are kept in part "to file an unlawful detainer based on the notice," i.e., in order to "engage in subsequent debt collection activity." Id. at 24. The fact that it is also generally wise for a law firm to retain records does not somehow change the fact that these records are used to engage in debt collection activity. Furthermore, compliance with the FDCPA—a law that prohibits abusive debt collection practices and consumer protection— does not conflict with basic record keeping. It certainly does not "deter clients from retaining lawyers for compliance advice . . . for fear of triggering the FDCPA." Id. [4]

---

[4] Finally, the court is not persuaded by Senex's argument that the compensation structure for issuance of the Notices supports its argument that it performs only ministerial functions. Senex charges $30 for final attorney review of delinquency Notices for certain of its landlord clients, but that fee cannot be considered in isolation. It is clear that Senex's role in preparing and sending the delinquency Notices is but a part of the comprehensive delinquent rent collection system

18

In sum, it cannot be concluded that Senex, operating a fully integrated system for collecting delinquent tenant rent for its landlord clients, merely engages in ministerial functions. To conclude otherwise would be to ignore the reality of the comprehensive Senex rent collection system.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for partial summary judgment is **GRANTED** and defendant's motion for summary judgment is **DENIED**. An appropriate order will be entered.

It is so **ORDERED**.

Entered: May 29, 2023

Michael F. Urbanski
Chief U.S. District Judge
2023.05.29 17:34:04
-04'00'

Michael F. Urbanski
Chief United States District Judge

---

it operates for its landlord clients. Because the court has limited information as to Senex's overall compensation derived from debt collection activities performed for its landlord clients, it is not able to fully assess this factor. Regardless, the other factors identified in Crawford support the conclusion that Senex engages in substantive, rather than ministerial, debt collection activities.